# THE STATE OF NEVADA ex rel. S. T. SWIFT *v.* THE COUNTY COMMISSIONERS OF ORMSBY COUNTY.

"Subsequent Tax Assessment" of Virginia and Truckee Railroad Company. Where, under the provisions of the Supplemental Revenue Act of 1867, (Stats. 1867, 111) the Virginia and Truckee Railroad Company applied to the county commissioners of Ormsby County to have the "subsequent assessment roll" for 1869, as to its property, equalized; and the commissioners thereupon ordered the entire subsequent assessment roll to be stricken out and remitted: *Held*, that they acted beyond their powers, and that their order was void.

Powers of County Commissioners Limited and Special. If the authority of the board of county commissioners, acting under limited and special powers, to do a particular thing is questioned, their record must exhibit affirmatively all the facts necessary to give them authority to do such thing, otherwise the presumption is against their jurisdiction.

EXTENT OF RELIEF AS AGAINST SUBSEQUENT ASSESSMENTS. Under the Supplemental Revenue Act of 1867, (Stats. 1867, 111) allowing every person feeling aggrieved by a supplemental assessment roll to appear before the county commissioners and apply to have such assessment equalized, modified or discharged, and authorizing the commissioners to hold a meeting to hear and finally determine the matter : *Held*, that the commissioners had no power to interfere with the subsequent assessment roll, except upon application of some person feeling aggrieved, and even then, in granting relief, not to go beyond the application made.

TREASURER'S POWERS AS TO SUBSEQUENT TAX ASSESSMENTS. The evident object of the Supplemental Revenue Act of 1867 (Stats. 1867, 111) was to make all assessments made by the treasurer final, or at least, exempt them from any supervision by the county commissioners, except in cases where application might be made by a person feeling aggrieved.

QUESTION INVOLVED ON CERTIORARI. Where, on application of a person to equalize as to his own property the subsequent assessment roll, as provided in the Supplemental Revenue Act of 1867, (Stats. 1867, 111) the county commissioners ordered the entire subsequent assessment roll to be stricken out; and their proceedings were carried by *certiorari* to the Supreme Court : *Held*, that the question before the Supreme Court was solely as to whether the commissioners had the authority to make the order striking out the entire roll, and that it could not consider the question as to the authority to equalize or discharge the assessment of the particular person making the application.

This was a *certiorari* issuing out of the Supreme Court to the board of county commissioners of Ormsby County, consisting of H. F. Rice, S. E. Jones and A. B. Driesbach. The return contained the minutes of the board, showing the facts as stated in the opinion.

*Robert M. Clarke*, for Relator.

I. The powers of the county commissioners are limited, and the jurisdiction must specially and affirmatively appear. (*Finch* v. *Tehama Co.*, 29 Cal. 455 ; *Rosenthal* v. *Madison & Ind. Turnpike Co.*, 10 Ind. 358.)

II. County commissioners have no jurisdiction to " equalize, modify, or discharge an assessment," unless application is made therefor. · (Statutes 1867, 111 ; *People* v. *Reynolds*, 28 Cal. 107 ; 6 Cushing, 477 ; 4 Nev. 254.)

III. Upon the application of the railroad company to have its assessment equalized, the county commissioners had no jurisdiction

or authority to discharge the assessment roll as to other persons assessed but not applying.

[No brief for Respondent on file.]

By the Court, LEWIS, C. J.:

The record in this proceeding shows that on the eleventh day of January, A.D. 1870, the Virginia and Truckee Railroad Company, by its attorney, appeared before the County Commissioners of Ormsby County, and applied to have the supplemental assessment of its property for the year A.D. 1869 equalized; which application it appears the board refused to consider. On the twenty-fifth day of the same month, the motion to equalize was renewed, taken under advisement, and two weeks afterwards this order was made and entered upon the records. " On motion of Mr. Jones, and by unanimous vote of the board, it is hereby ordered that the entire supplemental assessment for the year 1869 be, and the same is hereby, stricken out and remitted." Of the order thus made Swift complains, and upon *certiorari* brings up the record of the proceedings of the commissioners, in which nothing material appears beyond what is here stated.

That the board of county commissioners, when acting upon the assessment roll, is a body possessing but limited and special powers is an admitted proposition. When therefore its power or authority to do particular things is questioned, the record must exhibit affirmatively all the facts necessary to give it the authority to do the act complained of. When this is not done, the presumption is against its jurisdiction. (29 Cal. 453; 22 Maine, 566; 3 Allen, 550; *State of Nevada* v. *The Board of County Commissioners of Washoe County*, 5 Nev. 319.)

What then is the extent or character of the power conferred upon the commissioners by the Act under which this proceeding was had? The answer is found in section one of an Act entitled " An Act supplementary to an Act entitled an Act to provide Revenue for the support of the Government of the State of Nevada," (Statutes of 1867, 111) which, after providing for the supplemental assessment, declares in the proviso that " any person feeling

aggrieved by any such assessment may appear before the board of county commissioners and apply to have such assessment equalized, modified or discharged ; and the board of commissioners shall hold a general or special session to hear and finally determine the matter." It will be observed that the commissioners have the power to " equalize, modify or discharge an assessment on the subsequent assessment roll, only upon the application of some person feeling aggrieved thereby." They cannot come together on their own motion, nor in any way interfere with the roll as made up by the county treasurers, except when a complaint is properly made.

This is manifest, not only from the proviso thus quoted, but also from the provisions of the second section of the Act. Thus the tax is made payable immediately, and it is made the duty of the *ex officio* tax receiver to collect it immediately after the assessment, unless an equalization is claimed, and if equalized, immediately thereafter. This officer is also clothed with all the power of " county assessors to enforce the payment of all personal property taxes so assessed, and may seize and hold a sufficient amount of property at the expense of the owner thereof to secure the payment of the taxes so assessed during the pendency of an application before the board of county commissioners to have such assessment equalized, modified or discharged."

It is clear beyond all doubt from the provisions of this law that the board has no control over, or power to interfere with the subsequent assessment roll, except upon the application of some person feeling aggrieved by the action of the treasurer. Admitting its right to convene for the purpose of considering an application made to equalize, modify or discharge, has it the right or authority to go beyond the application made to it in granting relief, or rather can it extend its inquiries beyond the assessment complained of ? Certainly not. The authority given by the statute is simply " to hear and finally determine the matter." What matter ? Manifestly, the matter presented by the person making application to it, and nothing else. The evident object of the law is to make all assessments made by the treasurer final, or at least to exempt them from any supervision by the county commissioners except in cases where application may be made by a person feeling aggrieved. Such being

the object, it can hardly be said that if B complains of his assessment and asks that it may be equalized, the commissioners may not only act upon his complaint, but also equalize or discharge an assessment against C, who makes no complaint nor seeks relief. If such power be possessed by the board, why has the law required an application to be made at all by any person? We believe its action is confined strictly to the assessment complained of. Here, however, it does not appear that any one complained of the assessments or asked for relief, except the Virginia and Truckee Railroad Company; and this application was, to have the assessment on its own property equalized. Surely, upon such an application the commissioners could not equalize, modify, discharge, or in any way interfere with any other assessment. Their power was confined to the assessment complained of. But the order made by them and complained of here discharges the assessments of all persons, even where no complaint was made. It is therefore void, being entirely beyond the authority conferred by the law.

Again, it must be borne in mind that the order strikes out the entire subsequent assessment roll, and there is nothing in the law authorizing such action. Whence then the power? The board has no authority in this respect, except that which is expressly given, or is necessary to the execution of such as may be expressly conferred upon it. It might have the power to discharge every assessment if every person assessed made a proper application and showing, but its action in that case would not, if regularly pursued, be a general order striking out the roll, but should be a consideration of each assessment upon the evidence bearing upon each. It is not contended or claimed that such course was pursued here. It is argued, however, that so far as the Virginia and Truckee Railroad assessment is concerned, the application on its behalf gave the board jurisdiction of its assessment, consequently there was no want of power to discharge it; and hence, so far as the railroad is concerned, the order should be affirmed. The objection to such a course is, that it would virtually be a decision of a matter not before the Court. The only question presented by the record is, whether the board of commissioners had the authority to make the order striking out the assessment roll. We hold it had not; to

pass upon the question whether it was authorized to equalize or discharge the assessment of some one person on the roll, would be the determination of a matter not directly raised by the record; and again, to do so would in effect be the making of an order for the commissioners which they may never have intended to make. They may, for aught that appears here, have had reason for striking out the entire roll; for example, some informality reaching the validity of the whole assessment, which would be applicable to all alike, without having any desire to discharge any single assessment for reasons applicable to it alone.

In this case, it in no wise appears that the order made was founded upon any showing made by the Virginia and Truckee Railroad, or upon its application. Indeed, the natural presumption is, that it was not; for the application by it was simply to have its own assessment equalized, while the order made was to strike out the entire roll. How, then, is this Court to know that there was any thing in the case of the railroad to warrant a discharge from its assessment more than in the other cases? There is nothing in the record to show that there was. And thus the Court might, by modifying the order instead of setting it aside entirely, do that which the commissioners may not have desired to do. We hold they had no authority under the circumstances to make the order made by them; and there we must stop, without determining whether they had the authority to do that which they have not directly attempted to do.

The order must be set aside. It is so ordered.