RENAUD v. STATE COURT OF MEDIATION AND
ARBITRATION.

1. COURT OF ARBITRATION—CONSTITUTIONAL LAW.

The State court of mediation and arbitration, created by
1 Comp. Laws 1897, §§ 559–568, and empowered by that act
to hear and determine differences arising between employers
and employés in certain cases, is authorized by article 6, § 23,
of the Constitution, which provides that the legislature may
establish courts of conciliation, with such powers and duties
as shall be prescribed by law.

2. SAME—APPOINTMENT OF MEMBERS.

The statute creating such court is not unconstitutional in pro-
viding for the appointment of the members of the court,
instead of their election.

3. SAME—REHEARINGS.

Such court has no power to grant a rehearing of a cause de-
termined by it.

4. SAME—APPEAL—WRIT OF PROHIBITION—MANDAMUS.

No provision being made for an appeal from the decisions of
such court, its attempt to review a decision on rehearing
may be restrained by writs of prohibition and *mandamus*.

Petition by George A. Renaud and others against the
State court of mediation and arbitration for writs of
*mandamus* and prohibition to vacate an order .granting
a rehearing, and to restrain further proceedings by re-
spondent.    Submitted July 3, 1900.    Writs granted
September 18, 1900.

*James H. Pound* and *George F. Monaghan*, for re-
lators.

*Bowen, Douglas & Whiting*, for respondent.

MOORE, J.    Pingree & Smith are engaged in the busi-
ness of manufacturing boots and shoes in the city of
Detroit, and have a good many men and women in their

employ. Prior to December 16, 1899, differences arose between the employers and employed over the scale of wages. December 16, 1899, an agreement was signed by Pingree & Smith, on the one side, and Timothy O'Connor and Ernest A. Allen, on the other side, representing the employed, reading in its material part as follows:

"Being unable to agree on prices of the following work, we hereby jointly request an arbitration of the same by your honorable board, agreeing to abide by your decision. Prices to remain in force until May 1st, 1900."

A hearing was had before the court. The taking of testimony was completed March 9, 1900, and the case was argued by the counsel for the respective parties. On March 31st the court made a decision in writing, and filed the same in the office of the county clerk of Wayne county April 19, 1900. Pingree & Smith were dissatisfied with the decision of the court, and on April 6th moved for a rehearing of the case. June 23, 1900, the court granted the motion for a rehearing. The relators ask for a writ of prohibition or a writ of *mandamus*, or other appropriate writ, to prevent the respondent from rehearing the controversy.

It is the claim of the relators that, when the court rendered its decision, it exhausted its powers, and had no authority to grant a rehearing. Three questions are involved in this proceeding:

*First.* The existence of the court of mediation and arbitration.

*Second.* Its power to grant a rehearing after it has once decided a controversy submitted to it.

*Third.* Have the relators sought a proper remedy?

The existence of the court is attacked by the attorneys who argue the case and submit briefs in the interest of Pingree & Smith upon constitutional grounds. We cannot state their position more clearly than by quoting from brief of counsel:

"The act under which this court of mediation and arbitration was organized is unconstitutional. By section 1 of

article 6 of the Constitution, the judicial power is vested in one supreme court, in circuit courts, in probate courts, and in justices of the peace. Municipal courts of civil and criminal jurisdiction may be established by the legislature in cities. By section 23 of article 6, the legislature may establish courts of conciliation, with such powers and duties as shall be prescribed by law.

"The general scheme of the Constitution, as far as it relates to judicial officers, is for their election, and not for their appointment, as shown by article 12, which provides for impeachments and removals from office. Section 4 of that article provides that no judicial officer shall exercise his office, after an impeachment is directed, until he is acquitted; and section 5 of that article provides that the governor may make a provisional appointment to fill a vacancy occasioned by the suspension of an officer, until he shall be acquitted, or until after the election and qualification of his successor. *Chandler* v. *Nash*, 5 Mich. 409.

"Section 23, art. 6, of the Constitution, provides for the establishment of courts of conciliation; and by 'courts,' here, as well as elsewhere in the Constitution, is meant a permanent organization for the administration of justice, and not a special tribunal provided for by law, that is occasionally called into existence by particular exigencies, and that ceases to exist with such exigency. *Streeter* v. *Paton*, 7 Mich. 341; *Shurbun* v. *Hooper*, 40 Mich. 503; *Risser* v. *Hoyt*, 53 Mich. 185 (18 N. W. 611). If the administration of justice embraces the enforcement of the orders or decrees of courts, the court of mediation and arbitration, being deficient in authority given by the legislature to do this, is not such a court as is meant by section 23 of article 6; for, by the act of its creation, it can do nothing but render a decision on subjects submitted to it in a particular way, and file its decision with the county clerk. The Constitution provides for the formation of a court of conciliation, while the act provides for the establishment of courts of mediation and arbitration, which are not courts of conciliation.  *  *  * Under the act there is no authority given to the judges or members of the court to compel the appearance of either party, nor is there any method of composing the differences or questions in dispute by turning over the parties to a court with authority to enforce its decrees. From the terms of the act, it is clear that whoever drafted it had in mind the definition given above of 'arbitration,'

which, as that definition says, usually implies a tribunal without power to compel attendance."

It is true that as to the members of the supreme court, the circuit judges, judges of probate, and justices of the peace, the Constitution provides that they shall be elected; but we think it is not open to question that, if the Constitution did not require these judicial officers to be elected, but authorized the legislature to establish these courts and prescribe their powers and duties, it would be entirely competent for the legislature to do so. This is just what is done by section 23, art. 6, of the Constitution. The act does not fail because the legislature, in creating the court, did not provide its members should be elected.

We are, then, confronted with the question, Is the court of mediation and arbitration a court of conciliation? When the constitutional convention met which framed our present Constitution, in 1850, courts of conciliation had been in practical operation in Norway for more than 50 years. They had accomplished most excellent results in the way of harmonizing differences between parties who were otherwise likely to resort to litigation. The purpose of these courts was to create an inexpensive and speedy tribunal, before whom parties between whom differences had arisen in civil cases must go before resorting to the courts of law for relief. The parties were required to appear personally and without counsel, and state their differences, and present such proofs as they could in support of their respective claims. It was the duty of the court to advise with the parties, and, if possible, to bring about an amicable settlement of their differences, and have them depart as friends, and not enemies. If an amicable settlement was agreed upon, a judgment was entered, which would have the same effect as a judgment in any court. As these courts were first constituted, if the parties did not agree upon an amicable settlement they were left to their remedy in the courts of law; but, as we shall see later, further powers were afterwards conferred upon them.

Interesting descriptions of courts of conciliation are to be found in 68 Atlantic Monthly, 402, and 72 Atlantic Monthly, 671. Courts of a like character had also been in operation with most satisfactory results in France and Sweden, and possibly in some other countries of Europe. It is possible that, because of the results attained by these inexpensive and speedy tribunals, the framers of the Constitutio were led to incorporate in it section 23, art. 6, which reads, "The legislature may establish courts of conciliation, with such powers and duties as shall be prescribed by law." This language is simple and clear, and would seem to give the legislature abundant authority to create courts of conciliation, and to clothe them with as little or as great power as to the legislature seemed proper. At an address made at Michigan's semicentennial celebration, Justice CAMPBELL called attention to this constitutional provision. He had no doubt of the authority of the legislature to create these courts, and expressed regret that the legislature had not brought them into existence. In 1889 an act was passed by the legislature entitled "An act to provide for the amicable adjustment of grievances and disputes that may arise between employers and employés, and to authorize the creation of a State court of mediation and arbitration." The act is a brief one, containing but 10 sections, and is very general in its provisions. 1 Comp. Laws 1897, §§ 559–568. It is in marked contrast with the edicts or statutes calling these courts into existence in some of the countries of the old world. The Norwegian law of 1824 relating to courts of conciliation is a carefully-drawn statute, of 87 sections. It has been amended at various times. In 1869 the functions of this tribunal were considerably enlarged. These courts were primarily instituted for the purpose of being peacemakers in civil causes, and had no authority to enter judgment, except by the consent of the parties. As a rule, resort must be had to them in civil cases before the aid of the law courts could be invoked. By the later amendments, in case the parties do not agree to an amicable settlement

after listening to the advice of the court, the court is authorized, by the consent of the parties, to arbitrate the differences between them, and, in cases involving small amounts, may adjudicate the controversy at the request of either party.

In the decision of this case we are not aided by precedents. The constitution of the State of Louisiana makes it the duty of the general assembly "to pass such laws as may be proper and necessary to decide differences by arbitration." Const. art. 165. A law was passed calling into existence a board of arbitration, conferring upon it powers of a very similar character to those with which the court of mediation and arbitration is clothed. The action of this board was invoked in a matter of difference arising between the employés of a railroad company and their employer. The railroad company sought to have the board of arbitration enjoined from proceeding with the hearing. This the court refused to do. In disposing of the case, it used the following language: "It is in place here to state that the board is not vested with judicial functions. It sits as a court of conciliation, with the authority to formulate a decision and to have it recorded." New Orleans, etc., R. Co. v. Board of Arbitration, 47 La. Ann. 879 (17 South. 418).

It is to be regretted that the law passed by the legislature is not a more perfect one, but we think it very clear that the power conferred upon the respondent, if exercised, is calculated to bring about conciliations between those employers and employed between whom differences have arisen, and that the law was enacted, as suggested by its title, to provide for the amicable adjustment of grievances and disputes that may arise between employers and employed. The act does not apply to all classes of cases, and the aid of this tribunal is not a prerequisite before bringing an action in a court of law, as is required in Norway and in some other countries, but the provisions of the act are intended to bring about amicable adjustments of differences. We are not concerned with the

extent of the power conferred by the legislature upon this court, nor with the effect of its decisions. Those are questions we reserve until they are properly before us. The act does not undertake to confer power or impose duties in relation to all classes of civil cases, but such power as it does confer is within the constitutional right of the legislature.

We now come to the second question: Has the court a right to grant a rehearing after it has once rendered its decision? From what has already been said, it is apparent that the purpose to be served by the establishment of this court is to have a speedy and inexpensive disposition of the differences submitted to it. It was not the purpose of the legislature to create what we ordinarily understand by a court of law. The Constitution provides that these courts shall have such powers and duties as shall be prescribed by law. The law which called this court into existence is the limit of its power. The act nowhere authorizes the court to grant a rehearing. When its decision has been rendered and filed, it has exhausted its power in a given case. Some question is raised by counsel as to the effect of the decision rendered by the court, and the method of its enforcement; but we do not regard that question as properly before us in this proceeding, and do not pass upon it.

We now come to the final question: Have the relators sought a proper remedy? We have already stated that the court had no authority to act further in the proceeding. The statute does not provide for an appeal from the action of the court of mediation and arbitration. It has been repeatedly held that, unless the statute expressly or by plain implication provides for an appeal, none can be taken. See *Sullivan* v. *Haug*, 82 Mich., at page 555 (46 N. W. 795, 10 L. R. A. 263), and the many cases there cited. Section 191, 1 Comp. Laws 1897, provides when the Supreme Court shall have general superintending control over all inferior courts, and for the issuance of various writs,—among them, writs of prohibition and writs of

*mandamus.* Section 9977, 3 Comp. Laws 1897, provides when writs of prohibition shall issue. This section of the statute was construed in *Maclean* v. *Wayne Circuit Judge,* 52 Mich. 257 (18 N. W. 396). In that case a *mandamus* was ordered to vacate a restraining order improperly made, and a writ of prohibition was ordered to stay further proceedings in a case where the court attempted to exercise jurisdiction improperly. See, also, 2 Green, Prac. p. 827, and the cases there cited. The writ of *mandamus* will be granted, to vacate the order granting a rehearing; and the writ of prohibition, staying any further proceedings in the cause by the respondent.

The other Justices concurred.