[Civil No. 1278.   Filed September 30, 1912.]

[127 Pac. 727.]

THE STATE OF ARIZONA, Appellant, v. THE BOARD
OF SUPERVISORS OF YAVAPAI COUNTY, STATE
OF ARIZONA, Composed of WILLIAM STEPHENS,
ALONZO MASON and H. W. HEAP, as Supervisors of
Yavapai County, State of Arizona, and E. J. PARK, as
Clerk of the Board of Supervisors of Yavapai County,
State of Arizona, Respondents.

1. TAXATION — EQUALIZATION — BOARD OF EQUALIZATION — POWERS—
STATUTES.—Civil Code of 1901, paragraph 3867, provides that the
board of equalization shall meet on the first day of July in each
year and continue in session from time to time until the business
of equalization is completed, provided that it shall not sit at its
July meeting after July 20th, at which time it shall adjourn to meet
on the first Monday of August following, at which meeting it shall
have the same powers it possessed at its July meeting. Paragraph
3868 declares that the board shall have power to determine whether
the assessed value of any property is too small, and that it may
change or correct any valuation, and, if it believes it right to add
to the value of any property, it shall cause this fact to be inserted
in the advertised notice required to be given, but no assessment
can be raised unless it is included in the advertised notice. Para-
graph 3869 provides the form of notice, and paragraph 3870 re-
quires the board to meet on the third Monday of August following
and to at once proceed with the consideration of the assessments
specified in the advertised notice and then decide whether the
assessed value shall or shall not be raised, at which meeting the
person interested may appear and resist the increase. *Held*, that
the general words of paragraph 3867, "at which meeting it shall
have the same powers as it possessed at the July meeting," should
be limited by the special words of the act giving to the board,
at its July meeting, power to give notice of a contemplated raise
in individual assessments to be considered and determined at its
August meeting, but limiting its power at its August meeting to
consideration of the assessments specified in the advertised notice,
so that its only power to reduce values is at its July meeting and
its only power to raise values is at its August meeting.

2. TAXATION—BOARDS OF EQUALIZATION—POWERS.—Boards of equaliza-
tion are *quasi* judicial bodies whose jurisdiction is limited to the
powers expressly conferred by statute.

3. TAXATION—EQUALIZATION—REDUCTION OF ASSESSMENTS.—A board
of equalization having reduced the assessment of a corporation's

property twenty-five per cent below the value fixed by the assessor at its July meeting, such order became final and the board had no jurisdiction at its August meeting to grant a further reduction of twenty-five per cent.

4. TAXATION — ASSESSMENTS — EQUALIZATION—APPEAL.—Where a taxpayer is dissatisfied with the reduction allowed by the board of equalization at its July meeting, his remedy is by appeal as provided by Civil Code of 1901, paragraph 3875.

5. MANDAMUS—SCOPE OF REMEDY—EXTENT OF TAXES.—A board of equalization having reduced a corporation's assessment at its July meeting and having no power to make a further reduction at its August meeting, it was the duty of the board of supervisors to cause its clerk to carry into the assessment-roll the values fixed by the board of equalization at the July meeting, and such duty, being official as relating both to the board of supervisors and to its clerk as provided by Civil Code of 1901, paragraph 3882 et seq., was enforceable by *mandamus* under paragraph 3073, providing that the writ may be issued to any inferior tribunal, board or person to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station.

APPEAL from a judgment of the Superior Court of the County of Yavapai.  F. O. Smith, Judge.

Application for writ of *mandamus* by the state, on the relation of the attorney general, against the board of supervisors of Yavapai county.  From an order sustaining the motion to quash the writ and sustaining a demurrer to the petition and dismissing the proceeding, the state appeals. Reversed and remanded, with directions.

Mr. G. P. Bullard, Attorney General, for Appellant.

Mr. P. W. O'Sullivan and Mr. Joseph H. Morgan, for Respondents.

PER CURIAM.—This was an application by the state of Arizona, at the relation of the attorney general, for a writ of *mandamus* against the board of supervisors of Yavapai county and the clerk thereof.  An alternative writ was issued, but upon motion by defendants was quashed and general demurrers to petition were sustained.  It appears from the petition that before the third Monday of June, 1912, the United Verde Copper Company's properties were duly as-

sessed by the assessor of Yavapai county. That on July 20, 1912, the board of supervisors, while sitting as a board of equalization, gave a hearing to said company, and upon said hearing made an order and decision reducing its assessment about twenty-five per cent, below the value fixed by the assessor. That immediately after the adjournment of the July meeting of the board of equalization, the clerk thereof made and transmitted to the state auditor and board of equalization, as provided in paragraph 3877, Revised Statutes of Arizona, an abstract of the assessment-roll of Yavapai county for the year 1912. That, between and including the fourteenth and nineteenth days of August, the state board of equalization examined the abstracts of all the assessment-rolls of all counties of the state and became satisfied that the scale of valuations had been adjusted with reasonable uniformity throughout the state. That on the nineteenth day of August the state board of equalization fixed the rate of taxation for state purposes, based upon the abstracts of the assessment-rolls as returned to them by the different county boards of equalization after their July meeting. That the defendant board of supervisors, sitting as a board of equalization, on the nineteenth day of August, 1912, made an order that all the producing patented mines belonging to the United Verde Copper Company ''be reduced to a valuation equal to fifty per cent of the gross production of mining claims.''

It is the contention of the state that the board of equalization of Yavapai county having granted the United Verde Copper Company a hearing on July 20, 1912, and, having at such hearing made an order and decision fixing the valuation of said company's properties, the board exhausted its power to make any other or further order revoking, changing, or modifying the order and decision of July 20th. The contention of the defendants is that the board had the same powers to make the August order that it possessed to make the July order. That it could consider and reduce taxes and grant hearings and rehearings as often as it may choose and with equal effect, whether at the July or August meeting.

These varying contentions grow out of the language used in paragraphs 3867, 3868, 3869, and 3870 of Revised Statutes of Arizona of 1901, and those paragraphs, so far as applicable, are here quoted:

"3867 (Sec. 37).   The board of equalization shall meet on the first day of July of each year and shall continue in session from time to time until the business of equalization is completed: Provided, however, that it shall not sit at its July meeting after the twentieth day of July, at which time it shall adjourn to meet on the third Monday of August following, at which meeting it shall have the same powers it possessed at its July meeting."

"3868 (Sec. 38).   Said board shall have power to determine whether the assessed value of any property is too small or too large, and it may change and correct any valuation, either by adding thereto or by deducting therefrom, if, in its judgment from the information then possessed by it, the value fixed in the assessment-roll is too small or too large, whether such value was fixed by the owner or by the assessor; and if the board shall believe it to be right to add to the assessed value of any property, it shall cause this fact to be inserted in the advertised notice hereinafter provided to be given; but no assessment can be raised by the board unless it is included in such advertised notice."

Paragraph 3869 (section 39) provides the form of notice to be published which shall give the names of all parties, the value of whose property is to be raised, a description of the property, and the value at which it is assessed, etc. ·

"3870 (Sec. 40).   The board shall meet on the third Monday of August following at 9 o'clock in the forenoon of said day at the office, and shall remain in session not longer than the first day of September following.   It shall at once proceed with the consideration of the assessments specified in the advertised notice, and as part of their proceedings, proof of the publication of said advertised notice shall be made, as in other cases, and filed with the board.   This publication, so proven, shall be conclusive evidence in all cases that the ones named therein received due and legal notice that the property described therein would be considered by the board at its August meeting, that it would then decide whether the assessed value thereof should or should not be raised, and that the one owning the property and all others interested therein had full opportunity to appear and resist such increase."

It is interesting to know that paragraphs 3867, 3868, and 3870 are much in the same language as paragraph 2021 of the

Laws of 1877 and paragraph 2654 of the Laws of 1887, Arizona. The general methods of equalizing taxes in all are the same. The Laws of 1877 and 1887, *supra,* provided that the board of equalization shall meet the 1st of July "and shall continue in session, from time to time, until the business of equalization presented to them is disposed of. . . . And if the board of equalization shall find it necessary to add to the assessed valuation of any property, on the assessment-roll they shall direct their clerk to give notice to the persons interested by letter," etc. "And any person, to the assessed value of whose property there was an amount added, not appearing before the board of equalization in July may appear before the board in August," etc. Under the Laws of 1877 and 1887, the board of equalization was powerless to do anything at the August meeting as such board except to hear parties who had been legally noticed to be present at the hearing. Their power to reduce taxes was confined exclusively to the July meeting. The last sentence of paragraph 3867, *supra,* "at which meeting it shall have the same powers it possessed at its July meeting," is first found in the revision of the Laws in 1901. Has the language used by the legislature in 1901 changed the rule? "The board of equalization shall meet on the first day of July of each year and shall continue in session from time to time until the business of equalization is completed." Paragraph 3867.

It is apparent that the board's duty is to go over every individual assessment on the tax-roll at the July meeting and consider and equalize it, "from the information then possessed by it." However, the board may not raise valuations without giving the notice as provided in paragraphs 3868 and 3869, unless the taxpayer should voluntarily appear and have his day to be heard, and then only in subordination to the rule that, having voluntarily appeared and acquiesced in the action of the board in making the raise and having his day to be heard, he would thereafter, on the ground of estoppel, be precluded from questioning the exercise of a power, the exercise of which he consented to. The board may at its July meeting reduce valuations on its own motion or upon application, "if, in its judgment from the information then possessed by it, the value fixed in the assessment-roll is too large," but it may not raise an assessment except upon notice or

voluntary appearance. The procedure that must be followed by the board when a raise of valuation is contemplated is: "And if the board shall believe it to be right to add to the assessed value of any property, it shall cause this fact to be inserted in the advertised notice hereinafter provided to be given; but no assessment can be raised by the board unless it is included in such advertised notice." Paragraph 3868. Just what the board has power to do at the August meeting is clearly and explicitly prescribed. "It shall at once proceed with the consideration of the assessments specified in the advertised notice." Paragraph 3870, *supra.* Here is an express and specific limitation upon the powers of the board at its August meeting confining it to the consideration of the assessments advertised in the notice; the general words of the statute, "at which meeting it shall have the same powers it possessed at its July meeting," being limited by the special words of the statute. "General words in a statute should receive a general construction, but they must be understood as such in reference to the subject matter in the mind of the legislature and strictly limited in their application as not to lead to injustice, oppression, or an absurd consequence. So words of general import in a statute are limited by words of restricted import immediately following and relating to the same subject." 36 Cyc., p. 1118, subd. H.

If full import be given to the words found in paragraph 3867, "at which meeting it shall have the same powers it possessed at its July meeting," unrestricted in their application by the words of restricted import following in the statute, it may, and perhaps often would, lead to injustice as well as an absurd consequence. At its July meeting, by the specific words of the statute, the board has the power to give notice of a contemplated raise in the individual assessment to be considered and determined at its August meeting. If the board has all the power at its August meeting that it has at its July meeting, then it has the power of deferring any consideration whatever in the matter of raising individual assessments to the August meeting, thus giving it the power to raise assessments at the August meeting by giving a notice thereof during the August meeting. It could issue and publish notice of proposed raises during the August meeting, notwithstanding the provision of the law that such notices shall be ordered

at the July meeting and be published "at a time not later than the fifth day of August following." Under the law the August meeting cannot convene earlier than the third Monday in August following the July meeting, and so, of course, it is impossible for the board to meet in August prior to the time fixed by law for the publication of the required notice. To limit this language to its literal meaning would rob the board of making any raises whatever of values, for, as we have seen, no raises, except under the conditions stated, can be made except at the August meeting and upon notice. Thus it is seen that no raises of value can be made except at the August meeting, and that no reductions can be made at the August meeting, for the board is limited to "the consideration of the assessments specified in the advertised notice." But the board may make reductions of values, for it is granted that power, and, if it is interdicted from exercising that power at its August meeting, it indubitably follows that it may exercise the power to reduce values at its July meeting and at no other.

Boards of equalization are *quasi* judicial bodies, but inferior in their nature, and, in the exercise of the powers granted them by law, they must scrupulously limit their acts to doing those things that the law directly empowers them to do. They may not revoke, set aside, modify, or annul an order or decision of their own without the law grants them that right. If the board may make two reductions, as is attempted in this case, there is no reason why it may not make many more. If it may reduce *ad libitum,* it would likewise have power to make as many raises as it may please and as often as it could secure the appearance of the taxpayer. This may not be done.

Having acted upon the assessments of the United Verde Copper Company at its July meeting, its order at that meeting became final. If the company was "dissatisfied with its assessment as fixed by the board of equalization" at such meeting, it had the right of appeal as provided in paragraph 3875.

While the language of the Nevada Statutes (paragraph 3638) is not the same as ours, the general scheme of equalization is the same. In the case of *State* v. *Central Pac. R. Co.*; 21 Nev. 172, 26 Pac. 225, 1109, the railroad company had been assessed upon a valuation of $14,000 per mile for the year 1889. The company objected to the assessment as excessive,

but upon a hearing on September 24, 1889, the board of equalization made an order that the assessment remain as fixed by the assessor at $14,000 per mile. On October 7, 1889, the board met again, and a motion to reconsider their former action was adopted. Thereupon another motion was made and also adopted to reduce the assessment to $12,000 per mile. That court decided that the last order of the board was of no validity and said: "A board of equalization is of special and limited jurisdiction, and, like all inferior tribunals, has only such powers as are specially conferred upon it. It is essential to the validity of its action that they should be authorized by some provision of the statute, otherwise they are null and void. *State* v. *Commissioners*, 5 Nev. 317; *State* v. *Commissioners*, 6 Nev. 95; *State* v. *Railroad Co.*, 9 Nev. 79. Gen. Stats., sec. 1091, provides that the board shall have power to determine all complaints made in regard to the assessed value of any property. Without a complaint is made, it has no jurisdiction to act in the premises (*People* v. *Goldtree*, 44 Cal. 323; *State* v. *Northern Belle Co.*, 12 Nev. 89) ; and, after a complaint is once heard and determined, there is no provision for a new trial, a rehearing, or any further consideration of the matter. It follows from the principles already stated that the power to reconsider, not being expressly given, does not exist. This statement of the law is fully borne out by the adjudicated cases. *People* v. *Supervisors*, 35 Barb. (N. Y.) 408; *Hadley* v. *Mayor*, 33 N. Y. 603, 88 Am. Dec. 412; *People* v. *Ames*, 19 How. Pr. (N. Y.) 551; Mechem on Public Officers, sec. 509. In *People* v. *Supervisors*, 35 Barb. (N. Y.) 408, the board of supervisors of Schenectady county had met and legally apportioned and equalized the assessment of property among the several towns and wards of the county. The next day they reconsidered their action, and again apportioned and equalized the assessment, but upon a different basis. It was held, upon a very full review of the authorities, that in common with all other inferior jurisdictions they had by their first action exhausted their discretion over that subject; that such act was in fact a judgment, and they had no power to reconsider, to review, reverse, or annul their own judicial action. In *Hadley* v. *Mayor*, 33 N. Y. 603, 88 Am. Dec. 412, it was held that the common council of the city of Albany, having once legally canvassed the votes returned for

the election of mayor of said city, have exhausted their power over the subject, and cannot afterwards reverse their decision by making a different determination. The same rule applies to justices of the peace (*People* v. *Lynde,* 8 Cow. (N. Y.) 134), the courts established by statute (*People* v. *Marine Court,* 12 Wend. (N. Y.) 220), and to the district courts of this state, except in the manner authorized by law (*State* v. *District Court,* 16 Nev. 372).''

In *Renaud* v. *State Court of Mediation and Arbitration,* 124 Mich. 648, 83 Am. St. Rep. 346, 51 L. R. A. 458, 83 N. W. 620, the power of a special court of arbitration in labor disputes was involved, the same being a constitutional court, and that court said: ''Has the court a right to grant a rehearing after it has once rendered its decision? From what has already been said, it is apparent that the purpose to be served by the establishment of this court is to have a speedy and inexpensive disposition of the differences submitted to it. It was not the purpose of the legislature to create what we ordinarily understand by a court of law. The constitution provides that these courts shall have such powers and duties as shall be prescribed by law. The law which called this court into existence is the limit of its power. The act nowhere authorizes the court to grant a rehearing. When its decision has been rendered and filed, it has exhausted its power in a given case.''

Our conclusion is that the second order made at the August meeting of the board of equalization was made without authority of law and is therefore void. The respondents insist that *mandamus* will not lie in this case, but this is based on the assumption that the order of the board at its August meeting was made with full power to act, or at least said order was only irregular.

The board having no power to act in the premises at its August meeting, and the pretended order being void and of no effect, and the July order of the board being valid, it follows as a plain duty that the board of supervisors should have obeyed the July order and caused its clerk to carry on to the assessment-roll the valuations as fixed by the board of equalization at its July meeting. ''The writ of *mandamus* may be issued by the supreme or district court (now superior court) to any inferior tribunal, corporation, board, . . . or

person, to compel the performance of an act which the law specifically enjoins as the duty resulting from an office, trust or station." Rev. Stats. 1901, par. 3073. The duty to extend, or cause to be extended, on the assessment-roll the equalized values of all property of their county is clearly enjoined as a duty resulting from their office upon the board of supervisors and its clerk. Rev. Stats., 1901, par. 3882 et seq.; *People* v. *Supervisors*, 35 Barb. (N. Y.) 408; *Renaud* v. *State Court, etc., supra; People* v. *Dunn*, 59 Cal. 328. While the contentions of the respondents were urged by their attorneys with great learning, logic, and plausibility, both in brief and oral argument, we cannot agree with their construction of the law.

The lower court committed error in sustaining the motion to quash the writ, as likewise in sustaining the demurrer to the petition. The judgment and order of that court is reversed, and the case is remanded, with directions to the lower court to issue its peremptory writ of *mandamus* as prayed for in the petition.