[Civil No. 1298.    Filed September 26, 1913.]

[137 Pac. 417.]

ARIZONA COPPER COMPANY, LIMITED, a Foreign Corporation Engaged in Business in the State of Arizona, Appellant, v. STATE, at the Relation and to the Use of JOHN M. WEBSTER, Treasurer and *Ex-Officio* Tax Collector in and for the County of Greenlee, State of Arizona, Appellee.

1. TAXATION—COLLECTION—DEFENSE—WAIVER — UNJUST ASSESSMENT. Where a taxpayer fails to apply for a reduction of his assessment to the county board of equalization at its July meeting, as required by Civil Code of 1901, paragraphs 3867, 3868, he cannot set up that the assessment was unjust, as a defense in an action to collect the taxes thus assessed, even though he applied for a reduction to the board at its August meeting, and though the assessor were guilty of fraudulent and corrupt conduct.

2. TAXATION—COLLECTION—ACTION—ANSWER—ALLEGATION OF FRAUD. In an action for taxes due the state, an allegation of the answer merely that the county board of equalization, actuated by personal hostility and acting with the unlawful and malicious purpose of injuring defendant, refused to reduce the valuation of his property was not a sufficient allegation of fraud as against the board, in the absence of any statement that defendant in due time appeared before the board and was refused a hearing, or that the board allowed a hearing and arbitrarily disregarded conclusive evidence of overvaluation.

3. TAXATION—EQUALIZATION—EVIDENCE.—While the action of the county board of equalization is necessarily informal, it cannot reduce a valuation in the absence of any evidence that it was erroneous.

4. TAXATION—EQUALIZATION—RIGHT OF APPEAL.—A taxpayer may appeal, under Civil Code of 1901, paragraph 3875, from the action of the county board of equalization, though the board merely approves and neither raises nor lowers the valuation made by the assessor.

5. TAXATION—COLLECTION—ACTION—DEFENSE—ADEQUACY OF REMEDY BY APPEAL.—Where a taxpayer, by failing to apply to the county board of equalization in due time for a reduction of his assessment, loses his right to appeal from an order of the board approving the valuation by the assessor, he cannot be heard to complain, in a subsequent action against him for the taxes thus assessed, that the remedy of appeal provided by Civil Code of 1901, paragraph 3875, is inadequate.

6. TAXATION—EQUALIZATION—COLLATERAL ATTACK.—An order of the county board of equalization, approving the valuation of a taxpayer's property as made by the assessor, cannot be collaterally attacked in an action under Laws of 1903, No. 92, against the taxpayer for the taxes thus assessed.

7. TAXATION—COLLECTION—ACTION—JUDGMENT ON PLEADINGS.—Where the complaint, in an action for taxes, complies with requirements of Laws of 1903, No. 92, section 87, prescribing the essentials of such complaint, a mere general denial is insufficient to overcome its probative force and prevent the rendition of a judgment on the pleadings, where the answer admits defendant's ownership, the value, assessment by the proper officer, its equalization, and tenders the amount admitted to be due.

8. TAXATION—COLLECTION—ACTION—COSTS—ALLOWANCE OF ATTORNEY FEES.—In view of Civil Code of 1901, paragraphs 1557, 1558, providing that the prevailing party shall file and serve a statement of his costs, to which the opposing party may file exceptions, it was not error to allow attorney fees to the amount of twenty-five per cent of the judgment rendered against defendant in an action for taxes, pursuant to Laws of 1903, No. 92, section 86, providing that such fees shall be taxed as costs, though a general denial was filed and the attorney's contract with the collector was not introduced in evidence, where defendant did not move to retax the costs; the presumption in such case being that the amount charged was authorized by the attorney's contract and was properly included in the judgment.

APPEAL from a judgment of the Superior Court of the County of Greenlee. F. B. Laine, Judge. Affirmed.

### STATEMENT OF FACTS BY THE COURT.

This is an action at law to collect taxes for the year 1911 alleged to be due the state. The action is authorized by the

provisions of Act 92, Laws of 1903, which provides for the collection of delinquent taxes. The appellant's answer to the complaint consists of (1) a general demurrer, (2) special demurrer, (3) general denial, and (4) fraud on the part of assessing and equalizing officers. The fraud is alleged as follows:

"For further answer to the said complaint defendant says: That it is, and was at all the times mentioned in the complaint herein, the owner and in the possession and control of the property described therein. That, for the purposes of taxation, property in the territory of Arizona for the year 1911, being the year for which the plaintiff seeks by this action to enforce the collection of taxes alleged to have been levied upon and against the defendant's property described in said complaint, the various officers of the territory of Arizona charged with the valuation of the property in said territory for taxation determined upon and fixed as a basis therefor (except as to the products of producing mines) a valuation of not to exceed forty per centum of the full cash value thereof. That, in pursuance of such determination, the officers in the various counties in said territory, and the territorial board of equalization, as well as the boards of equalization of the several counties of said territory, charged with the valuation of the property in said territory for the purpose of taxation for said year 1911 and with the duty of the equalization of such valuations, valued, and equalized the valuations of, all the property in said territory and in the several counties thereof, subject to taxation, except that of this defendant, as hereinafter set forth (and excepting the products of producing mines), at not to exceed the said forty per centum of its full cash value. That the assessor of said Greenlee county, acting in that respect in accordance with the general rule of valuation of property adopted, practiced, and under which property was valued for the purpose of taxation in said territory and in the several counties thereof as aforesaid, did in fact value all other property in said Greenlee county (except the products of producing mines and excepting that of the defendants as hereinafter set out), for the purposes of taxation for said year 1911, at a valuation not exceeding forty per centum of its full cash value. That the assessor of said Greenlee county was by law charged with

the valuation of property in said Greenlee county in said territory for the purposes of taxation for said year 1911, and in fact did fix the valuation thereof, including that of the defendant, as hereinafter mentioned, it all being then located and situated in said county of Greenlee, upon which the taxes, the collection of which is sought by this action to be enforced, were actually levied. That the said assessor was at all said times personally hostile toward this defendant and its corporate officers, agents, and managers, and entertained personal animosity toward it and toward them, and was during all said times in such a state of mind toward this defendant and its corporate officers, agents, and managers as would and did preclude him from acting fairly, impartially, and justly in the matter of the valuation of defendant's said property for the purposes of taxation. That said assessor as aforesaid, intending thereby to harass, embarrass, and oppress, injure, and damage this defendant, valued the property of this defendant, described in the complaint, for the purposes of taxation for said year 1911, and each and every part thereof, at a sum greatly in excess of forty per centum of its value, to wit, at more than sixty per centum thereof in the aggregate. That forty per centum of the true cash value of all said property of the defendant described as aforesaid in the complaint is and was not to exceed the sum of $1,170,368.95. That the said assessor, acting as aforesaid with a malicious and unlawful intent to harass, embarrass, annoy, oppress, injure, and damage this defendant, valued the said property of the defendant for the purposes of taxation at the sum of $1,899,458.50, being in excess of $729,489.55 over and above the true and just valuation thereof as aforesaid.

"Defendant further says that the district attorney of said county of Greenlee, and each of the members of the board of supervisors of said county, were, during all of said year 1911 and during all the times while said property was being listed for taxation and valued, and the valuation thereof equalized, and each of them was personally hostile toward this defendant and its officers, agents, and managers and bore personal animosity against it and them, and that there existed in each of them such a state of mind as would preclude them severally and collectively, and which did in fact preclude them severally and collectively, from acting in the matter of

the valuation of defendant's said property, and in the equalization of the valuation thereof, proportionately to that of other property in said county, with fairness, justness, and impartiality. And on or about the —— day of August, 1911, and while the board of supervisors of said Greenlee county was in session and acting as a county board of equalization, and while the said assessor of said county and the district attorney of said county were present aiding, advising, and assisting said board of equalization, this defendant appeared before said board of equalization and then and there asked that the valuation of its property fixed as aforesaid by said assessor might be reduced by the sum of $729,489.55, being the excessive valuation thereof as aforesaid, to the sum of $1,170,368.95, so that such valuation of defendant's property aforesaid might accord with and be valued by the rule aforesaid applied to the valuation of all other property for the purpose of taxation in said county and in said territory for said year 1911. That said board of equalization, aided and assisted therein by the county assessor and said district attorney as aforesaid, and all acting in the premises with the unlawful and malicious purpose of harassing, embarrassing, oppressing, injuring, and damaging this defendant, refused to reduce said valuation of said property or any part thereof, and ordered that the valuation thereof as made by the assessor as aforesaid should be, remain, and stand as the assessed valuation of defendant's said property for the purpose of taxation for said year 1911. That thereafter, as defendant is informed and believes, the board of supervisors of said Greenlee county did levy and assess against said property, and all thereof, taxes based at and proportioned upon said grossly excessive valuation thereof, all substantially as stated in the complaint, to wit, in the aggregate a sum of $38,458.29, being the amount of taxes for the enforcement and collection of which plaintiff brings this suit.''

To the answer of fraud, appellee interposed: (1) A plea to the jurisdiction of the court to hear the issue, alleging that the court's powers were limited by paragraph 3875, title 62, chapter 3, Revised Statutes of 1901. (2) Specially demurred (a) that the answer showed that appellant's property was assessed for only sixty per cent of its cash value; (b) that answer is a collateral attack on judgment of board of equali-

zation; (c) that tender is insufficiently pleaded; (d) that insufficient facts to show legal fraud are pleaded. (3) Plea in bar (a) in that answer admits jurisdiction of assessing and equalizing officers; (b) that tender pleaded is an estoppel to deny jurisdiction; (c) a failure to appeal from action of board of equalization after appearing at the August meeting and asking for a reduction. . . . (4) A general and special denial of all the allegations of appellant's affirmative answer.

The special demurrer was sustained, and, appellant refusing to amend, judgment was entered for appellee for taxes, penalties, interest, and costs. From this judgment this appeal is taken.

Messrs. Kibbey, Bennett & Bennett, for Appellant.

Messrs. Stoneman & Ling, for Appellee.

ROSS, J.—The demurrers to appellant's answer alleging fraud upon the part of the assessing and equalizing officers present two questions: First, as to whether the equitable defense of fraud may be interposed in an action at law to collect delinquent taxes under the provisions of Act 92, Laws of 1903. Second, granting that such a defense is allowable, are the facts alleged in answer sufficient to constitute fraud? We will consider these two propositions in the inverse order stated above.

The county assessor, under our revenue law, must take the initial step in ascertaining and valuing the assessable property of his county. Indeed, this duty is solely his. Having listed and valued the property of his county, his assessment-roll is given over to the board of supervisors as a board of equalization whose duty it is to equalize the values of the property within their county. It is in connection with these duties enjoined by law upon the assessor to list and value, and the board of equalization to equalize, the property of their county that the appellant bases its claim of fraud. It is charged that the assessor was hostile toward appellant, its officers, agents, and managers, and entertained personal animosity toward it and them, and, because of this state of mind, he would not and could not act fairly, impartially, and justly in the valuation of appellant's property, but that,

intending thereby to harass, embarrass, and oppress, injure, and damage appellant, he valued its property at more than sixty per cent of its true value in the aggregate, while all other property in Greenlee county was placed at a valuation not exceeding forty per cent of its full cash value. It requires no argument to discover in these facts a clear case of discrimination and inequality. The taxpayer is entitled to the fair and honest judgment of the assessing officer in fixing valuations. To say the least, it is apparent from the facts as alleged (and they must be taken as true on demurrer) that the assessor acted arbitrarily, partially, and unjustly toward appellant. There was not only discrimination as between taxpayers, but the fundamental principle of uniformity was violated. The appellant was entitled to have the wrong done it corrected. Its property, being proportionately overvalued or excessively valued when compared with the valuation of other property in Greenlee county, was entitled to a reduction so as to equalize it with other values. A taxpayer in such a situation, under the laws of Arizona, must first take his case before the county board of equalization. This board, which meets in July of each year, has power to determine whether the assessed value of any property is too small or too large, and it may change or correct any valuation by adding thereto or deducting therefrom. Reduction may be made on its own motion or upon application of the taxpayer. Paragraphs 3867, 3868, Rev. Stats. 1901.

In those jurisdictions where an aggrieved taxpayer is permitted under the law to make his objections to an assessment, as made by the assessing officer, to a reviewing or equalizing body, it is uniformly held, so far as we have seen, that he must first exhaust that remedy before he may invoke the aid of the courts to relieve him. In 37 Cyc. 1079, the law is so well stated that we quote: "When the statutes provide a remedy against an excessive, erroneous, or improper assessment of property of an individual, by proceedings before a board of equalization or review, the taxpayer must at his peril avail himself of this remedy and cannot resort to the courts in the first instance; and, if he neglects properly to bring his complaint before the board of review, he cannot assail the assessment in any collateral manner nor invoke

the common law or equitable powers of the courts for the redress of his grievance.''

The appellant made no application to the county board of equalization for a reduction of the valuation of its property at its July meetings. It was decided by this court in *State* v. *Board of Supervisors,* 14 Ariz. 222, 127 Pac. 727, that the board of equalization had power at its July meetings, on its own motion or on application, to reduce valuations when in its judgment the value was fixed too high, and it was also held that the board had no power or jurisdiction to make a reduction at its August meeting. The application to the board at its August meeting for a reduction of valuation was a futile thing. If the request had been granted and values lowered by the board, the order would have been of no effect as without and beyond the jurisdiction of the board. *State* v. *Supervisors, supra.* The appellant, therefore, did not avail itself of the remedy of applying to the board of equalization, as provided by our statutes, to have its excessive valuation corrected.

It is insisted, however, that the fraudulent and corrupt conduct and action of the assessor vitiated the assessment; that fraud vitiates all transactions; and that the assessor's acts were void, resulting in no assessment whatever. The board of equalization's power to correct an overvaluation is the same whether the excess is the result of defective judgment honestly exercised or good judgment corruptly and fraudulently exercised. The damage or injury to the taxpayer is the same whatever the motive of the assessor or even in the absence of a motive. The language of the statute. is: ''Said board shall have power to determine whether the assessed value of any property is too small or too large, and it may change and correct any valuation, either by adding thereto or by deducting therefrom. . . .'' Par. 3868, Ariz. Rev. Stats. 1901.

The reasoning of the court in *Crawford* v. *Polk County,* 112 Iowa, 118, 83 N. W. 825, wherein the taxpayer was complaining of an arbitrary and fraudulent and excessive assessment, applies with force to the facts of this case. The court in that case said: ''An error in overvaluation is always subject to correction and, if fraudulent, differs from others only with respect to the motive of the assessor. The same remedy

is available, and there appears no good reason for not following it.    But it is said fraud vitiates everything, and for this reason resort may be had directly to the courts.    That may be true as between private parties, but the state and its agencies ought not to be deprived of the revenues nor the citizen relieved of his just portion of the burden of taxation because of the evil motive of the officer.''

In *Los Angeles Gas & Electric Co.* v. *County of Los Angeles*, 162 Cal. 164, 121 Pac. 384, the court said: ''Where the only alleged effect of the fraud of the assessor is excessive valuation of the property of the taxpayer for assessment purposes, the conclusion of the board of equalization that the fair value for such purposes is the amount fixed by the assessor would appear to render the fraud of that officer immaterial, for it is in no way injurious.    According to the conclusion of the board, the property is assessed at the same value proportionately as all the other property in the county. Unless that determination can be avoided, it is conclusive on the question of fairness of the valuation, hence on the question of injury.    Under the authorities it cannot be avoided unless the board has proceeded 'arbitrarily and in wilful disregard of the law intended for their guidance and control, with the evident purpose of imposing unequal burdens upon certain of the taxpayers' (*Oregon etc. R. R. Co.* v. *Jackson Co.,* 38 Or. 589, 599, 64 Pac. 307, 65 Pac. 369), or unless there be something equivalent to fraud in the action of the board.    Mere errors in honest judgment as to the value of the property will not obviate the binding effect of the conclusion of the board.    Such a board is, 'in the absence of fraud or malicious abuse of its powers, . . . the sole judge of questions of fact and of the values of property' '' (*La Grange etc. Co.* v. *Carter,* 142 Cal. 565, 76 Pac. 243).

There is an attempt in the appellant's answer to impeach the honesty, fairness, and impartiality of the board of equalization.    They are charged with having the same prejudices and motives as the assessor.    They, however, did not originally fix the value of which complaint is made.    It is not shown that they even knew that appellant's property was proportionately overvalued.    When the untimely application at the August meeting of the board was made, the extent of

XV Ariz.—2

appellant's efforts, using its own language, was that it "appeared before the board of equalization and then and there asked that the valuation of its property fixed as aforesaid by said assessor might be reduced by the sum of $729,489.55, being the excessive valuation thereof. . . . " The matter of raising or lowering valuations of property by the board of equalization is not so trivial or unimportant as that it may ordinarily be done upon the mere "asking" of the taxpayer. There should be submitted to the board real and substantial reasons before expecting its members to change or modify the official finding of another officer of the county.

While the procedure of necessity is informal and there is an absence of technical requirements, the judicial action of the board in lowering valuations should be founded in reason and upon facts. To lower a valuation upon the request and without evidence would be as arbitrary as it would be to raise a valuation without notice or proof. In the absence of an allegation that there was a tender of proof that appellant's property was proportionately overvalued, and there being nothing alleged to indicate or show that the board knew of the discrimination or proportionate overvaluation, the charge of fraud and oppression on the part of the board falls to the ground. To the allegations of fraud and oppression in appellant's answer, the language of the court in *County of Cochise* v. *Copper Queen Co.*, 8 Ariz. 221, 232, 71 Pac. 946, 949, seems particularly applicable. The court there said: "It is a general rule of pleading that, in alleging fraud, the facts which constitute such fraud must be stated. To characterize an act as 'fraudulent' does not, in legal effect, charge it as fraudulent, unless some circumstances or fact be charged which shows in what the fraud consists and how it has been effected." The general charge that the board, being actuated by motives of personal hostility, and "acting in the premises with the unlawful and malicious purpose of harassing, embarassing, oppressing, injuring, and damaging" the appellant, "refused to reduce" the valuation of property, and "ordered the valuation thereof as made by the assessor should be, remain, and stand as the assessed valuation" of appellant's property, is not a sufficient allegation of fraud as against the board and, standing alone, amounts to nothing. Had such allegation been aided and supported by a showing

that appellant, at a time allowed by law, appeared before the board and demanded a hearing and a hearing was refused, or, if allowed, the evidence of overvaluation, although conclusive, was arbitrarily disregarded, the court would have something by way of specific acts to test the truth of the general allegation of wrong conduct. The board of equalization when legally assembled with jurisdiction to act in the premises, upon a proper and sufficient showing, should have been appealed to to rectify the wrong here complained of. From appellant's own showing no such opportunity was ever presented. It is not even shown that the board knew of the alleged overvaluation.

The appellant has devoted much of its brief to an effort to show that the remedy by appeal, as provided in paragraph 3875, Revised Statutes of 1901, could in no event be availed of by it, and that, unless it is sustained in its contention in its present form, it is without remedy. One of the reasons assigned against the remedy of appeal, as granted by paragraph 3875, *supra,* as not being open to appellant, is that the terms of the statute limit the right to those only, the value of whose property was "fixed by the board of equalization." The valuation as returned by the assessor is the valuation of which complaint is made. It was neither raised nor lowered by the board, and therefore it is argued the board had nothing to do in fixing the value. If that be true, the appellant has argued itself out of court. For if the board, as such, did not fix the valuation, the charge that they equalized the appellant's property and ordered the valuation to remain and stand as fixed by the assessor with the unlawful and malicious purpose of oppressing and damaging appellant falls to the ground. In other words, if the board of equalization in their official capacity were not called upon to act and did not act on the valuation of property as returned by the assessor, neither fraud nor malice in fixing the value could be charged to the board. The process of equalizing the values of property, whether raised, lowered, or approved as returned by the assessor, requires the exercise of discretion and judgment, and as much so in one case as the other. We do not agree with appellant in its contention that he only may appeal the value of whose property has been raised. Indeed, its argument along that line is in direct conflict with

the allegations of its answer, for in the answer it is charged that the board "equalized" its property and "ordered" that the valuation fixed by the assessor remain and stand as the true valuation of its property. The appellant was entitled to an appeal from the order of the board of equalization.

But appellant complains with great energy and ability of the inadequacy of the remedy of appeal, as provided in paragraph 3875, *supra;* but inasmuch as it has failed to avail itself of the other legal remedies open to it, and in so doing lost its right of appeal, as therein provided, we do not feel called upon to pass upon that very interesting question.

It would seem that the demurrers were properly sustained for the following reasons: (1) Granting that the overvaluation of appellant's property by the assessor was fraudulent and arbitrary, the appellant's remedy for correcting the error was by a timely application to the county board of equalization for a reduction. (2) No such application was made. (3) The judgment of the board that the value fixed by the assessor was the correct value renders the fraud of that officer immaterial. (4) The determination of the board that the valuation of appellant's property was proportionately assessed with other property in Greenlee county was final, in the absence of a showing that the board acted arbitrarily and in willful disregard of the law. (5) Treating the application made to the board in August as timely, it fails to show fraud on the part of the board, fails to show that the board refused to hear appellant's application, fails to show that appellant gave or offered proof of overvaluation, and fails to show that the board had any information or knowledge of an overvaluation of appellant's property by the assessor.

The judgment of the board on the valuation of appellant's property is conclusive and may not be collaterally attacked, as is attempted in this proceeding.

Act 92, Laws of 1903, provides for the collection of delinquent taxes and is the law under which this proceeding is being prosecuted. This act is copied almost bodily from the Missouri law covering the same subject matter. *State ex rel.* v. *Western Union Tel. Co.*, 165 Mo. 502, 65 S. W. 775, was an action at law to collect back taxes for the year 1899. In that case it is said: "The answer contains two defenses:

First, that the state board of equalization intentionally discriminated against defendant in assessing its property at its full value, while other property in the state is only assessed at from thirty-five to forty per cent of its value. . . . ''
After citing and discussing a number of cases bearing on the contention of the defendant, the court said: ''The defendant cannot avail itself of these cases for the reasons: First, that it seeks to raise the question of discrimination by a defense to an action at law to collect the taxes, and thereby collaterally attacks the judgment of the board of equalization.'' This case was affirmed by the supreme court of the United States in 190 U. S. 412, at page 427, 23 Sup. Ct. Rep. 730, at page 734 (47 L. Ed. 1116), the language of the court being: ''We think overvaluation of property cannot be a ground of defense at law. In other words, the action of the tax officers, being in the nature of a judgment, must be yielded to until set aside. This can only be done in a direct proceeding.''

The assessment here contested was made for the year 1911, while Arizona was a territory, and the decision of the supreme court of the United States would be binding and conclusive if Arizona were still a territory. It certainly is entitled to more than ordinary weight with the state court for that reason and the additional reason that the decision is upon a case of discriminatory overvaluation in a suit at law based upon the same statute from which ours is copied.

Judgment was rendered on the pleadings. It is contended by appellant that evidence should have been submitted to overcome its general denial. It is said that all the facts in the complaint were denied and that the denial had the effect of requiring evidence of a valid assessment and levy. Section 87, Act 92, Laws of 1903, provides that the petition or complaint in this kind of action shall show ''the different years for which taxes are due as well as the several kinds of taxes or funds to which they are due, with the respective amounts due to each fund, all of which shall be set forth in a tax bill of said back taxes, duly authenticated by certificate of the tax collector and filed with the petition, and said tax bill or bills so certified shall be *prima facie* evidence that the amount claimed in said suit is just and correct. . . . '' The complaint conforms with this requirement of the statutes,

and a mere denial is not sufficient to overcome its probative force. Besides, construing the answer as a whole, it admits the ownership of the property to be in appellant, admits the value, admits the assessment as made by the proper officer, admits the equalization of the assessment, and makes a tender of what it conceives to be due. The denial, when viewed in connection with these admissions, traverses no material allegation of the complaint. The only issue, indeed, was the issue of fraud, and, having decided that against appellant, it was the duty of the court to render judgment in favor of the appellee.

There was taxed as costs and included in the judgment attorney's fees in amount twenty-five per cent of the judgment for taxes. It is complained that this was error in the face of the general denial. Section 86, Act 92, Laws of 1903, provides: " . . . To enforce the lien of the territory and for the purpose of prosecuting suit for taxes under this chapter the collector shall have power, with the approval of the county board of supervisors to employ such counsel as he may deem necessary who shall receive, as fees in any suit such sum, not to exceed twenty-five per cent of the amount of the tax actually collected and paid into the treasury, as may be agreed upon in writing and approved by the county board of supervisors before such services are rendered, which sum shall be taxed as costs in the suit and collected as other costs. . . . ''

Appellant insists that the attorney's contract with the collector should have been introduced in evidence before the court was authorized to give judgment for the attorney fees. It will be observed that the attorney's fees are to be "taxed as costs in the suit and collected as other costs." The provisions of the above Act 92, concerning attorney's fees, are in substance the same as the Missouri law on the same subject, and in *State ex rel. v. Edwards,* 144 Mo. 467, 46 S. W. 160, the Missouri supreme court construed their statute holding that the attorney's fees are properly taxed as costs in the suit. It appears that they were so taxed in this case and included in the judgment as the other costs. Paragraph 1557, Revised Statutes of 1901, is as follows: "The party in whose favor judgment is rendered and who claims his costs, shall file a statement of his costs, and shall serve a copy

thereof on the opposing attorney. In his statement he may include therein the fees of officers, of witnesses, costs of taking depositions, compensation of referees, and such other disbursements as may have been made or incurred pursuant to any order of court or agreement of the parties. The statement must be filed within ten days next after judgment, unless, for good cause shown, the time shall be extended by the court." Paragraph 1558 provides that the opposing party may file exceptions to the cost bill within five days after the receipt of a statement of the costs, whereupon the court shall pass upon the same and correct it if it requires correction.

If the trial court committed error in giving judgment for attorney's fees, the appellant was afforded ample remedy to have the same corrected by a motion to retax the costs. The main question, as to whether the appellant owed the taxes claimed, having been decided adversely to appellant, and judgment ordered therein, the costs, including attorney's fees followed the judgment. Their amount and legality when properly questioned by the appellant, was subject to adjudication and correction by the trial court. No motion to retax the costs having been made, we must assume that the amount charged was authorized by the attorney's contract with the tax collector and was properly included in the judgment.

The judgment of the trial court is affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

Application for rehearing denied.