499 P.2d 190

**COUNTY OF MARICOPA, a political subdivision of the State of Arizona, et al., Petitioners,**

v.

**The Honorable Kenneth C. CHATWIN, Judge of the Superior Court, Maricopa County, Respondent;**

and

**FIRST NATIONAL BANK OF ARIZONA, a national banking association, Real Party in Interest.**

**No. I CA–CIV 1882.**

Court of Appeals of Arizona, Division 1, Department B.

July 13, 1972.

Beer & Kalyna by Olgerd W. Kalyna, Phoenix, for petitioners.

Streich, Lang, Weeks, Cardon & French by Dan M. Durrant, Phoenix, for real party in interest.

HAIRE, Chief Judge, Division 1.

In this special action proceeding, the petitioning governmental authorities contend that the trial court should be prohibited from proceeding further in an action brought by the respondent taxpayer seeking certain tax relief by way of "mandamus and/or declaratory judgment". In the event that this Court does not see fit to prohibit further proceedings in the trial court, petitioners alternatively request relief from a discovery order entered by the trial court relating to certain interrogatories propounded by the respondent taxpayer.

On July 2, 1971 the respondent taxpayer (First National Bank of Arizona) filed in the Maricopa County Superior Court its complaint consisting of five separate counts. In general, the first count com-

plained of an assessment as of January 1, 1971 of the taxpayer's uncompleted downtown Phoenix office building, contending that an uncompleted building has no value until complete and ready for occupancy, and further contending that the assessor had failed to assess and include on the tax rolls other uncompleted structures similarly situated. The taxpayer further alleged that such treatment was "unlawful and discriminatory". This first count also alleged that the taxpayer had appealed the assessor's above-mentioned action to the Maricopa County Board of Supervisors sitting as a Board of Equalization and to the Arizona State Board of Property Tax Appeals, but that the taxpayer had not "obtained the relief to which it was entitled."

The second count complained that the assessor had classified as "commercial" or "Class 3" the land forming the subjacent support for taxpayer's uncompleted building, and that this land should have been classified as "other real property" or "Class 4" property as defined in A.R.S. § 42–136.[1] Again the taxpayer alleges unconstitutional discriminatory practices in connection with the above-mentioned classification.

Count III alleges as an alternative to Count I that if the uncompleted building is subject to assessment, it also should be assessed as Class 4 property rather than as Class 3 property.

Count IV complains that the assessor made the above-mentioned assessment late, and alleges that the failure to have completed the assessments on January 1, 1971 resulted in certain unconstitutional discrimination against plaintiff.

These first four counts all requested mandatory injunctive relief against the assessor in the nature of mandamus. The fifth count sought declaratory judgment relief based upon the first four counts in the event the court should determine that mandamus was not an appropriate remedy.

In the trial court the defendant governmental authorities moved to dismiss the taxpayer's complaint on the grounds that by reason of A.R.S. § 42–204, subsec. B (Supp.1971–72)[2] the trial court had no jurisdiction to grant the extraordinary relief requested; that classification of property could only be tested pursuant to an appeal under A.R.S. § 42–146, subsec. A (Supp. 1971–72); and that before plaintiff could appeal to the courts under any circumstances the tax must be paid under protest. Although we do not agree in full with petitioners' contentions, we are of the opinion that the trial court erred in refusing to dismiss the taxpayer's complaint.

The laws of the State of Arizona relating to the procedures and remedies available to a taxpayer for the purpose of raising questions concerning the classification or valuation of his property, or for the purpose of raising any other questions concerning the legality of an assessment or tax imposed upon his property, have been in a state of change in Arizona during the

---

1. Under A.R.S. § 42–227 Class 3 property is assessed at 25% of it full cash value, while Class 4 property is assessed 18% of its full cash value.

2. A.R.S. § 42–204 (Laws 1970, Ch. 82, § 5) reads as follows:

"A. Any person upon whom a tax has been imposed or levied under any law relating to taxation shall not be permitted to test the validity or amount thereof, either as plaintiff or defendant, if any of the taxes levied and assessed against the property of appellant are not paid as provided in § 42–342, subsection B, paragraphs 2 and 3, except that in the case of private car companies the taxes shall be paid as provided in § 42–746.

"B. No injunction, writ of mandamus or other extraordinary writ shall issue in any action or proceeding in any court against the state or an officer thereof, or against any county, municipality or officer thereof, to prevent or enjoin the extending upon the tax roll of any assessment made for tax purposes, or the collection of any tax imposed or levied.

"C. After payment of the tax, an action may be maintained to recover any tax illegally collected, and if the tax due is determined to be less than the amount paid, the excess shall be refunded in the manner provided by this title."

past few years, primarily because of the enactment of new legislation and numerous and frequent amendment of these new enactments. A discussion of the fundamental changes wrought in the Arizona *ad valorem* property tax structure as a result of the Arizona Supreme Court's 1963 decision in Southern Pacific Company v. Cochise County, 92 Ariz. 395, 377 P.2d 770 (1963), is set forth in this Court's opinion in Burns v. Herberger, 17 Ariz.App. 462, 498 P.2d 536 (filed June 29, 1972), and will not be repeated in detail here. Suffice it to say that because of these numerous and frequent changes in legislative enactments, most of the older decisions of the appellate courts of this state relating to remedies available to the dissatisfied taxpayer have been rendered obsolete and even recent decisions must be closely scrutinized so as to be considered in view of the statutes in existence at the time and governing the particular issue at the time the dispute arose.

As previously mentioned, plaintiff's complaint was filed in the Superior Court on July 2, 1971. Therefore the remedies available to plaintiff must be considered in light of the legislative framework existing at that time.[3]

This framework sets forth basically three different approaches which a dissatisfied real property taxpayer might utilize in attempting to obtain relief from alleged wrongful action by the taxing authorities, with the approach to be utilized depending in part upon the legal questions which the taxpayer might seek to advance.

The first of these possible approaches might best be referred to as the "administrative appeal" approach. Under A.R.S. §§ 42–221, 42–241.01, 42–245 and 42–146 (Supp.1971–72), provisions are made for a succession of administrative review procedures starting with an initial petition filed with the assessor, thence to the County Board of Equalization, and then administratively terminating with a review by the State Board of Property Tax Appeals. Under A.R.S. § 42–146, subsec. A,[4] any taxpayer dissatisfied with the valuation or classification of his property by the State Board of Property Tax Appeals may appeal to the Superior Court in the manner provided by A.R.S. § 42–151. Likewise, under the provisions of § 42–245,[5] an appeal to the Superior Court may be taken directly from the intermediate determination as to valuation or classification made by the County Board of Equalization, without the taxpayer being required to exhaust his administrative remedies by first appealing the determination made by the County Board of Equalization to the State Board of Property Tax Appeals.

The second approach which might be utilized by the dissatisfied taxpayer is that set forth in A.R.S. § 42–246, which reads as follows:

"Any person dissatisfied with the valuation or classification of his property as determined by the county assessor may, whether or not he files an appeal with the assessor, county board or state board, appeal to the superior court in the manner provided in § 42–151 on or before November 1."

This approach might be characterized as the "direct appeal" approach. It will be

3. The Court notes that many amendments to the pertinent portions of A.R.S., Title 42 became effective April 8, 1971.

4. A.R.S. § 42–146, subsec. A reads as follows:
"A. Any taxpayer dissatisfied with the valuation or classification of his property as reviewed by the state board of property tax appeals, may appeal to the superior court in the manner provided by § 42–151 and not otherwise."

5. A.R.S. § 42–245 reads in part as follows:

"A. Any person dissatisfied with the valuation or classification of his property as fixed by the county board of equalization may appeal in the following manner:
"1. To the superior court in the manner provided in § 42–151 on or before November 1.
"2. To the state board of property tax appeals by filing a petition with the state board within twenty days of the date of the mailing of the decision of the county board to the petitioner."
\* \* \* \* \*

noted that under the provisions of this statute, a dissatisfied taxpayer may completely bypass all administrative remedies, and *appeal* directly to the Superior Court "in the manner provided in § 42–151 on or before November 1."

The third approach is one which the Arizona Supreme Court has recently found to have existed at common law (see State Tax Commission v. Superior Court, 104 Ariz. 166, 450 P.2d 103 (1969)) and finds legislative approval in the provisions of A. R.S. § 42–204.[6] Under this approach the tax is paid under protest and an independent action is filed seeking a refund of the alleged overpayment. It is important to note that this statute (§ 42–204) does not designate this approach as an "appeal", and it is not governed by the procedural provisions of A.R.S. § 42–151 et seq., nor is it entitled to the procedural advantages inherent in a § 42–151 appeal.

A fourth possible approach which is recognized by the courts, but which is not sanctioned by legislative enactment, is the injunctive or extraordinary remedy approach. Perhaps the statement that this approach is not sanctioned by legislative enactment is an understatement. A reading of A.R.S. § 42–204, subsec. B (quoted in footnote 2, *supra*), indicates that the legislature has sought to expressly prohibit the use of this type of remedy, and for this reason and for policy reasons expressed in many of its decisions, the Arizona Supreme Court has narrowly limited the situations in which such extraordinary remedies might be utilized.

■ We have previously indicated in this opinion that the choice of the remedial avenue to be followed by a dissatisfied taxpayer is, to a large extent, dictated by a consideration of the legal issues which he wishes to advance. In this connection we have set forth in some detail the questions which the respondent First National Bank urged in the five counts of its complaint filed in the Superior Court, among which are claims of discrimination. The "administrative appeal" and "direct appeal" approaches present certain very definite advantages to the taxpayer. Some of the advantages are that under § 42–152, subsec. A the Superior Court is required to hear the appeal within 90 days. In addition, and of prime importance, the payment of the tax under protest is *not* a prerequisite to the *filing* of a § 42–151 appeal. This is evident from the express provisions of § 42–151, subsec. E, which reads as follows:

"E. All taxes levied and assessed against property on which an appeal *has been filed* by the owner thereof *shall* be paid under protest prior to the date the tax becomes delinquent. A receipt shall be given for the amount of such tax paid, and within ten days a copy of the receipt shall be filed by the owner with the clerk of the court in which the appeal is docketed. If such taxes are not paid prior to becoming delinquent, of [or] if a copy of the receipt for payment is not so filed, the court shall dismiss the appeal." (Emphasis added).

When the language of subsection E is compared with that of its predecessors,[7] it is evident that the intent of subsection E is to allow the dissatisfied taxpayer to pursue his *appeal* remedies under § 42–151 with a minimum of delay and without the necessity of waiting until the tax rate has been set and the actual amount of the tax determined and paid. But, § 42–151, subsec. E does add an important caveat—if prior to the culmination of the litigation involved

---

6. Quoted *supra*, footnote 2.

7. Compare the language of A.R.S. § 42–146, subsec. B prior to its amendment, "No appeal shall be taken unless the appellant *first* pays to the county treasurer the amount of taxes levied and assessed against his property . . . ." Also see A.R.S. § 42–245, subsec. C (effective

1967) "Unless appellant, *before taking the appeal,* pays to the county treasurer . . . ." (Emphasis added).

The reviser's note *indicates* that pursuant to the authority of § 41–1304.02, the words "payment of tax as prerequisite to appeal" have been added in the section heading by the reviser. This is contrary to the language of subsection E.

in the appeal to the Superior Court the taxes become due, they must be paid prior to becoming delinquent and a receipt filed with the clerk of the Superior Court, otherwise "the court shall dismiss the appeal."

However, the greatest disadvantage inherent in the "administrative appeal" and "direct appeal" approaches is the limitation on the legal questions which may be presented in these procedures. In our opinion the only issues that a taxpayer may raise under these procedures are those concerning the correct classification of the property and the determination of full cash value. Contrary to this conclusion, it might be argued that the State Board of Property Tax Appeals and the County Board of Equalization having been given broad powers to equalize valuations (*see* A.R.S. § 42–141, subsec. A and § 42–241 (Supp.1971–72) et seq.), by implication were also given the power to consider a taxpayer initiated claim of unconstitutional discrimination in an attempt by that taxpayer to have his full cash value valuation lowered. See also § 42–241.01, subsec. D which provides:

"D. Both the assessor and the county board of equalization in considering any petition filed by any person under this article shall take into consideration the valuation as fixed by the assessor upon other similar property similarly situated."

In our opinion this statute merely requires that the assessor consider comparable properties in establishing a full cash value, and does not relate to a discrimination claim.

In support of our conclusion that the administrative remedies which lead to a § 42–151 appeal may not consider the issue of unconstitutional discrimination, § 42–152, which governs the Superior Court hearing on a § 42–151 appeal, *expressly limits* the evidence which may be introduced and the findings which the Superior Court may make, as follows:

"B. At the hearing both parties may present evidence of any matters that relate to the *classification* or to the *full cash value* of the property in question as of the date of its assessment. The valuation or classification as approved by the appropriate state or county authority shall be presumed to be correct and lawful.

"C. If the court finds that the valuation is excessive or insufficient, the court *shall find the full cash value* of the property. If the court finds that the classification is in error, *it shall determine the correct classification.*" (Emphasis added).

These limitations effectively negate any contention that otherwise might be made that constitutional or legal issues not related to the factual determination of the correct classification or the correct "full cash value" valuation were intended to be considered in the § 42–151 appeal approaches.[8] Rather, the taxpayer who desires to raise non-classification or non-full cash value issues such as unconstitutional discrimination, is left to the previously existing remedies—the payment of the tax under protest and the filing of an action for refund under the provisions of A.R.S. § 42–204, or possibly the pursuit of extraordinary remedies if the facts are such as to justify such relief.

While plaintiff's complaint as originally filed requested mandatory injunctive and declaratory judgment relief, subsequent developments and requests for amendment of the complaint, as well as arguments made in this Court concerning the exclusiveness of certain remedies, have made it necessary for the Court to consider in some detail the various remedies which might be available to a dissatisfied taxpayer. With the above background in mind, we now

---

8. *See* to the same effect, Guard v. County of Maricopa, 14 Ariz.App. 187, 481 P.2d 873 (1971) relying upon the provisions of A.R.S. § 42–147, repealed effective April 8, 1971.

turn to a consideration of plaintiff's complaint as originally filed in July of 1971 and the relief requested therein. It will be recalled that the complaint questioned both the correctness of the classifications given plaintiff's land and uncompleted improvements, and further raised a claim of unconstitutional discrimination insofar as concerned the imposing of any valuation or tax at all on plaintiff's uncompleted improvements. Thus, plaintiff sought to raise questions which could properly have been the subject of the above discussed administrative appeal or § 42–246 direct appeal approaches, and, in addition, discrimination questions which we have held may not be raised in such proceedings. Further, plaintiff sought to raise this combination of questions, not in a § 42–204, subsec. C suit for refund after payment of taxes under protest, but rather by action filed prior to the time of the determination of the amount of the tax due, seeking mandatory injunctive relief against the assessor.

■■■■ First, let us state that in our opinion the administrative appeal and/or direct appeal procedures culminating in a § 42–151 appeal to the Superior Court do not constitute the exclusive means by which a dissatisfied taxpayer may question the factual correctness[9] of the classification or valuation of his property as contended by the taxing authorities. Rather, it is our opinion that these same issues may be raised in a § 42–204, subsec. C suit for refund after payment under protest. While the application of the doctrine requiring exhaustion of administrative remedies as a prerequisite to resort to the courts might at first glance appear to require a contrary result, we are of the opinion that a review of the peculiar statutory provisions here involved indicates a legislative intention to provide alternative remedies and, in fact, to preserve to the taxpayer in its totality his § 42–204, subsec. C remedy which previously existed. Our research into the

statutory history of the reference in § 42–204, subsec. C to taxes "illegally collected" reveals that this same language has been used since the Struckmeyer Code of 1928 without change. Therefore, it cannot now be argued that these words were intended to restrict § 42–204, subsec. C actions for refund to the raising of constitutional discrimination questions. It is our opinion that a dissatisfied taxpayer desiring to raise questions concerning both the factual correctness of the classification or valuation on his property and also questions concerning unconstitutional discrimination may first avail himself of a § 42–151 remedy insofar as concerns the factual correctness of the classification and valuation of his property, and later present his discrimination questions in a § 42–204, subsec. C action for refund, or he may choose to wait and present all of these questions in the § 42–204, subsec. C action without resort to the administrative remedies. Of course, if both § 42–151 and § 42–204, subsec. C actions are pending at the same time relating to the same property, it might well be that these pending actions should be consolidated in the interest of all concerned.

We therefore reject the petitioning tax authorities' contention that the complaint should have been dismissed solely for the reason that plaintiff's remedy concerning the factual correctness of the classification and valuation was limited to the filing of an appeal in accordance with § 42–151.

■■■■ We turn now to an examination of the remedy sought by plaintiff in the Superior Court action. When stripped to its essentials, the relief requested by plaintiff is that the assessor be enjoined from extending upon the taxroll the assessment made against plaintiff's property. This is contrary to the express terms of the present provisions of A.R.S. § 42–204, subsec. B.[10] In McCluskey v. Sparks, 80 Ariz. 15, 291 P.2d 791 (1955), injunctive relief against

---

9. We use the term "factual correctness" as indicating the absence of legal questions concerning unconstitutional discrimination or other constitutional or strictly legal questions.

10. Quoted *supra*, footnote 2.

the extending of an assessment upon the rolls was permitted upon a claim of discrimination. The injunctive relief was granted, however, primarily because there was no adequate remedy at law as the statutory remedies then available provided only for the determination of whether the taxpayer's property had been assessed at full cash value. We point out that there is no longer any such limitation on § 42–204 relief (*see* Drachman v. Jay, 4 Ariz.App. 70, 417 P.2d 704 (1966)), and therefore the statutory remedy would be adequate and injunctive relief improper.[11] Furthermore, subsequent to McCluskey, the provisions of § 42–204, subsec. B have been amended so as to expressly prohibit the enjoining of the *assessment* as well as the enjoining of the collection of taxes. The philosophy underlying statutes of this character is that the government not be hampered or interfered with in the collection of revenues so essential to the sustenance of governmental functions. State ex rel. Lane v. Superior Court, 72 Ariz. 388, 236 P.2d 461 (1951).

In Drachman v. Jay, *supra,* Division 2 of this Court was presented with the exact issue here involved. In a well reasoned opinion, Judge Molloy reviewed the pertinent Arizona cases and statutory provisions, and concluded that equitable relief was not available, that the taxpayer was restricted to filing a § 42–204, subsec. C action for refund, and that this constituted an adequate remedy at law. We adopt Judge Molloy's conclusions, and would end our discussion of this particular issue at this point were it not for plaintiff's contention that the subsequent decision of the Arizona Supreme Court in State Tax Commission v. Superior Court, 104 Ariz. 166, 450 P.2d 103 (1969) has overruled Drachman. We disagree. In fact, as we read that decision, it extends the holding of Drachman so as to prohibit injunctive relief even though the taxing *statutes* fail to provide *any* remedy at law. In that case,

the taxpayers (owners of airlines and tank car properties) sought injunctive relief, raising claims of unconstitutional discrimination in the classification scheme, and also the denial of due process because A. R.S. § 42–204 and other statutory provisions (as then written) failed to provide for taxpayers owning properties of the nature there involved, any statutory procedure for questioning the classification or valuation of their property, or for the payment of the tax under protest and the filing of a suit for refund. The Arizona Supreme Court recognized that there was indeed a lack of any *statutory* remedy, and then proceeded to hold that there was a *common law* right to sue for the recovery of taxes paid under protest when such taxes were illegally exacted. The Supreme Court then made permanent its previously issued writ which prohibited the trial court from proceeding further with the plaintiff's suit for injunctive relief. While there is some language in the Supreme Court's opinion which indicates that the Court recognizes the authority of its prior decisions holding that injunctive relief would lie when "the mode of assessment produces discriminatory inequality on the same class of property", this language must be considered in the light of the immediately following paragraph of that opinion, which directly and exactly describes the issue presented here:

"We further hold that where taxes appear to have been imposed under semblance of authority and adequate remedies have been delineated in the taxing Statutes, the taxpayer must pursue such remedies to secure relief." 104 Ariz. at 169, 450 P.2d at 106.

■ Here it cannot be seriously argued that the valuation and assessments were made without semblance of authority. We therefore hold that plaintiff was not entitled to the equitable relief requested, and

11. Since the 1969 decision of the Arizona Supreme Court in State Tax Commission v. Maricopa County, *supra,* such argument would be without merit even if § 42–204, subsec. C had not been amended, inasmuch as there now exists a common law remedy.

further hold that the same policy reasons which prohibit equitable relief apply equally to plaintiff's premature request for declaratory relief. The statutes previously discussed in detail herein provide adequate remedies, and plaintiff must utilize those remedies if it wishes to question the legality, validity or amount of that assessment against its properties.

■ Having decided that petitioners' motion to dismiss should have been granted, we now consider the disposition to be made upon remand to the Superior Court. From the pleadings and memoranda filed in this special action proceeding, it appears that plaintiff did pay its tax under protest prior to the time it became delinquent, and has filed in the pending Superior Court action a motion to amend its complaint so as to allege a § 42–204, subsec. C action for refund of taxes paid under protest. Also, there is some indication that a separate § 42–151 appeal is pending in the Superior Court and that counsel have discussed the possibility of the consolidation of these actions.

Upon remand, the respondent judge is directed to dismiss the original complaint and grant the respondent First National Bank's motion to file an amended complaint stating a claim for refund pursuant to the provisions of A.R.S. § 42–204, subsec. C and seeking only the relief provided for in that statute. Thereafter the parties may present to the trial court a motion for consolidation if deemed desirable.

Since plaintiff's claim of discrimination will be given new life through the filing of an amended complaint, we must consider one additional question which is raised by petitioner and is likely to occur again in the event the respondent taxpayer decides to pursue its discrimination claim by means of an A.R.S. § 42–204, subsec. C action for refund.

■ In the course of the trial preparation pertaining to the respondent's original complaint (which we have now ordered dismissed), the respondent taxpayer moved, in accordance with Rule 37(a), Rules of Civil Procedure, 16 A.R.S., for an order compelling the defendants to answer certain interrogatories, which ultimately was granted by the trial court. The defendants objected to the following interrogatories:

"3. List each parcel of property on which the improvements were partially completed which was assessed by the Maricopa County Assessor's Office pursuant to the directive dated October 9, 1970 from the State Department of Tax Valuation, and with respect to each such parcel, state:

a. The parcel number.

b. Legal description.

c. Valuation and classification given the land.

d. Valuation and classification given the improvements.

e. Classification of the land prior to the classification given in subparagraph c above.

f. The status of the improvements or stage of completion of the improvements on said land at the date of valuation.

g. The valuation date.

h. The person conducting the appraisal or assessment.

i. The appraisal technique utilized in arriving at the appraisal for the improvements.

"4. List each building permit received by the Maricopa County Assessor's Office during 1970 with respect to which the structure to be constructed pursuant to said permit had been started but had not been completed according to the records of the Maricopa County Assessor on or before December 31, 1970. With respect to each such building permit, list:

a. The type of structure to be build as evidenced by such permit.

b. The value of such structure.

c. The classification of such structure, whether residential, commercial, apartment or otherwise.

**d.** The owner of the land and contemplated building or structure.

**e.** The contractor who was to do the construction of such building or improvements.

"5. State each and every structure or improvement of which you are aware which was in the stage of partial completion on December 31, 1970 in addition to those listed in Interrogatory No. 4 and for which the Maricopa County Assessor's Office did not have a building permit."

In the main, defendants' objections to these interrogatories were as follows:

"1. Most of the material if obtainable at all may be derived from the production of business records in accordance with the provisions of Rule 33(c), Rules of Civil Procedure.

"2. The information if available at all may not be given without undue labor and expense.

"3. They require defendants to make extensive investigation, research, compilation and/or evaluation of data.

"4. The information is a matter of public record and will require research and is available to the plaintiff.

"5. Compilation of the data would require many hundreds of man hours of the employees of the County of Maricopa and the Assessor's Office, and would interfere with the duties of the Assessor to such a degree as to constitute harassment of the defendants."

Rule 33(c), Rules of Civil Procedure, relied upon by defendants, provides as follows:

"Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, or from a compilation, abstract or summary based thereon, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the inter-

rogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries."

In written response to the respondent's motion to compel answers, the defendant advised the Court that the matters inquired into could only be determined from voluminous records of the assessor's office; that the assessor was willing to make these records fully available to personnel of the plaintiff at any reasonable time, and that the assessor was willing to assign an employee of his office to direct and aid the respondent's personnel in gleaning and interpreting the information; that to require the assessor to do this work would result in enormous expense and interference with the normal duties of the assessor's office; and that the assessor estimated that it would require at least 30 working days effort on the part of 15 or 20 employees to compile the information requested.

At the hearing on the motion to compel answers to the interrogatories counsel for defendant further advised the court that to compile the information requested in the interrogatories would require a search of some 350,000 assessment cards; that there is no list to which the assessor could go and acquire the information; that there was no programming done in a computer which would allow the selective determination of the information required; that insofar as concerns building permits received by the assessor's office, there are some 56,000 of these permits which would have to be individually examined.

The respondent in urging the granting of its motion to compel the answers to the interrogatories emphasized the language of Rule 33(c) "and the burden of deriving or ascertaining the answer is substantially the same", and from this urges that the burden imposed upon the respondent taxpayer to

examine the records would be substantially greater than the burden imposed upon the defendant-assessor.

Based upon the record made, it is our opinion that the facts presented show a typical situation envisaged by Rule 33(c). Other than the general statement to the effect that the one man sent over to the assessor's office was not making much headway, respondents presented no evidence showing that the burden placed upon it in examining the records would be substantially greater than that which would be placed upon the defendants. As indicated, the defendants have offered to supply personnel to aid the respondent in becoming familiar with the records and system involved, and to continually aid respondent. Here we are concerned with public records, and from the arguments presented it is clear, aside from the necessity of obtaining an initial familiarity with the method involved and the location of the records, that the principal burden is that of sifting through and examining the enormous quantity of records in order to obtain the information desired by respondent. For either party the burden of obtaining the desired information would be great, but in our opinion it would be "substantially the same" for both, particularly in view of the aid and assistance offered by defendants. By making the foregoing comments, we do not intend to preclude the trial court from considering anew any question which might subsequently arise under Rule 33(c). It might well be that an additional showing might be made by the plaintiff-taxpayer which would justify compelling answers to such interrogatories. However, in our opinion, a much stronger showing than was previously made must be presented.

The relief requested is granted in accordance with the foregoing, and the matter is remanded for further proceedings consistent with this opinion.

EUBANK and JACOBSON, JJ., concur.