551 P.2d 559

**DEPARTMENT OF PROPERTY VALUA-
TION, Appellant,**

**v.**

**SALT RIVER PROJECT AGRICULTURAL
IMPROVEMENT & POWER DISTRICT
and Board of Property Tax Appeals of the
State of Arizona, Appellees.**

**No. I CA–CIV 2647.**

Court of Appeals of Arizona,
Division 1,
Department B.

June 29, 1976.

Rehearing Denied Aug. 17, 1976.
Review Granted Oct. 13, 1976.

Bruce E. Babbitt, Atty. Gen. by Robert F. Brunn, James D. Winter, Mary Z. Chandler, Asst. Attys. Gen., and Donald P. Roelke, Sp. Asst. Atty. Gen., Phoenix, for appellant.

Jennings, Strouss & Salmon by Clarence J. Duncan, Leo R. Beus, Phoenix, for appellee Salt River Project Agricultural Improvement & Power Dist.

## OPINION

JACOBSON, Presiding Judge.

This appeal requires the court, among other issues, to consider the constitutionality of the statutes allowing the Department of Property Valuation to appeal to the Superior Court from a determination made by the State Board of Property Tax Appeals.

The appellee, Salt River Project Agricultural Improvement & Power District (Project) is not subject to ad valorem taxes of the state of Arizona. Art. 13, § 7 and Art. 9, § 2 of the Arizona Constitution. However, pursuant to A.R.S. § 45–2201 *et seq.*, the Project is authorized to make voluntary contributions in lieu of the ad valorem taxes if it chose to do so. Since 1964, when this enabling legislation was enacted, the Project has each year made voluntary contributions in lieu of ad valorem taxes. The amount of the contri-

bution is determined in the same manner as the amount of ad valorem taxes are determined, that is, by applying appropriate tax rates to the "full cash value" of the contributor's property. In this case we are concerned only with that valuation.

In the years 1970, 1971 and 1972, the appellant, Department of Property Valuation (Department) determined, pursuant to A. R.S. § 45–2202(B) the "full cash value" of the Project's property to be $186,429,000.-00, $212,800,000.00 and $256,424,000.00, respectively. In each of these years, the Project appealed the Department's valuation to the Board of Property Tax Appeals (Appeal Board) and in each year the Appeal Board reduced the valuation found by the Department to $172,000,000.00 in 1970, to $193,829,000.00 in 1971 and to $230,-673,000.00 in 1972. Each year a reduction was made, the Department duly appealed, pursuant to A.R.S. § 42–151,[1] to the Superior Court of Maricopa County.

All three appeals were subsequently consolidated into one proceeding. After consolidation and discovery, the Project filed a motion for summary judgment on two grounds: (1) that in view of the statutory presumption (A.R.S. § 42–152(B)) of the correctness of the Appeal Board's determination of valuation, there were no material issues of disputed fact, and (2) in any event A.R.S. § 42–151 *et seq.* is unconstitutional, and therefore the last legal body having jurisdiction (the Appeal Board) should be affirmed. The trial court granted summary judgment on both grounds and the Department has appealed.

## PROPRIETY OF GRANTING SUMMARY JUDGMENT

We are favored in this matter by a comprehensive opinion written by the trial court, setting out in detail why, in its opinion, the Project was entitled to summary

---

1. At the time of the first appeal in this matter, appeal to the superior court from a determination of the Appeal Board was under A.R.S. § 42–147. Since both parties agree the present statute is the same as the former insofar as pertinent to the issues for determination in this appeal, the present statutory citation will be utilized throughout this opinion.

judgment. The basis of the trial court's decision was that Arlo Wollery, Director of the Department, testified through deposition, that the valuation of property is more an art than an exact science and that qualified appraisers looking at the same property and using the same methods of valuation could differ by 10%. The trial court then found that the same valuation evidence which was presented to the Appeal Board, would be presented to him as a trial judge. Since the valuations found by the Appeal Board were within 10% of those set by the Department, the trial court felt compelled by A.R.S. § 42–152(B), which gives the Appeal Board's determination a presumption of correctness, to find that the evidence presented by the Department did not overcome this presumption and that the Appeal Board's determination had to be affirmed.

The Department first attacks this reasoning by contending that the Appeal Board is not an "appraisal board" and therefore is not entitled to draw its own conclusions from the evidence presented to it, but is limited to an evaluation of the appraisal opinions in evidence. Since the only expert appraisal opinions the Appeal Board had, all of which set the Project's valuation equal to or in excess of the Department's initial valuation, the Appeal Board had "no substantial evidence" to justify its valuation and therefore its determination was not entitled to the statutory presumption which was the basis for the trial court's ruling. We disagree.

■■■■ While it is true that the Appeal Board's determination must be supported by substantial evidence, *Arizona Copper Company Ltd. v. State,* 15 Ariz. 9, 137 P. 417 (1913), this does not mean that it is bound by the opinions of the appraisers or experts which appeared before it. *Sun City Water Co. v. Arizona Corporation Commission,* 26 Ariz.App. 304, 547 P.2d 1104 (1976). In our opinion, the Appeal Board was established at least at the time

pertinent here, to review on an administrative appellate level, decisions as to valuations of taxpayer's property. *See,* A.R.S. § 42–141; A.R.S. § 42–245. As such an administrative appeals board, in our opinion, it has authority to reduce the valuation set initially by the taxing authority and in this regard is allowed to determine the proper valuation of property provided that it does so on substantial evidence. In this case there is no contention that the valuation placed by the Board on the Project's property was not the result of its independent evaluation of the data placed before it or that such data would not constitute substantial evidence for its evaluation. Rather, the Project contends that it is limited to choosing between the opinions before it as to valuation and may not independently determine this valuation. We find no legislative enactments which would support such a contention and therefore reject it.

We next turn to the Department's contention that if, in fact, the Appeal Board was allowed to independently evaluate the Project's property, it made a prima facie showing before the trial court that this valuation was improper so as to preclude the granting of summary judgment against it. This in turn requires a determination of the weight to be given the statutory presumption of correctness of the Appeal Board's valuation which statutory presumption the trial court relied on in granting summary judgment. A.R.S. § 42–152 (B) provides:

"B. At the hearing [before the Superior Court] both parties may present evidence of any matters that relate to the classification or to the full cash value of the property in question as of the date of the assessment. *The valuation or classification as approved by the appropriate state or county authority shall be presumed to be correct and lawful.* (emphasis added)

It is not disputed that the Appeal Board is "the appropriate state authority" and thus

entitled to the statutory presumption of correctness.

The Arizona Supreme Court has recently classified the statutory presumption as "one of fact, however, and is overcome when 'evidence contradicting the presumption is received'." *Department of Property Valuation of the State of Arizona v. Trico Electric Cooperative, Inc.*, 113 Ariz. 68, 546 P.2d 804 (1976). Did the Department present evidence contradicting the decision of the Appeal Board? Attached to the Department's opposition to the Project's motion for summary judgment were affidavits of three appraisers setting forth their opinions as to the valuation of the Project's property, all of which exceeded the valuation found by the Appeal Board. There is no doubt that these appraisers would be qualified to give their opinion as to the valuation on a trial of this matter. Also, there is no doubt that if they had testified at time of trial their opinion as to valuation would have been "evidence".

■ In our opinion, this "evidence" was thus sufficient to overcome the presumption of fact that the Appeal Board decision was correct and at least precluded the granting of summary judgment based upon the statutory presumption alone. It is further our opinion that this statutory presumption merely gives rise to a burden of proof requirement and as pointed out in *Department of Property Valuation v. Trico Electric Cooperative, Inc., supra,* "that the Department must bear the burden of proving that the assessment is insufficient when it appeals from the decision of the Board."

We therefore hold that the trial court incorrectly granted summary judgment based upon the statutory presumption created by A.R.S. § 42–152(B).

## CONSTITUTIONALITY OF A.R.S. § 42–123(B) INSOFAR AS IT DEALS WITH THE RIGHT OF THE DEPARTMENT TO APPEAL A DECISION OF THE APPEAL BOARD

Since we have held that the trial court improperly granted summary judgment under the facts of this case, we next turn to the second ground upon which the trial court relied in granting summary judgment, that is, the unconstitutionality of the statutory scheme for appeals of the decision of the Appeal Board.

In order to properly comprehend the Project's attack on the constitutionality of the statutory scheme involved in the determination of taxpayer liability for taxes, a background in the statutory procedures and prior case law interpreting those procedures is necessary.

There are basically two methods by which a taxpayer may contest the amount of taxes levied against his real property, be that taxpayer one in the position of the Project, whose property is assessed by the Department or an individual resident owner where property is assessed by the county assessor. The most commonly utilized procedure culminates in a superior court review under A.R.S. §§ 42–151 and 42–152.[2] The taxpayer, however, has an option as to how he can arrive at a superior court determination under A.R.S. § 42–151. One route he can follow is known as the "administrative appeal." This involves the taxpayer seeking a review of the assessing body's determination of classification or valuation by the Appeal Board. A.R.S. § 42–245(A)(2). Any party dissatisfied with the Appeal Board determination may then appeal to the superior court under A.R.S. § 42–151.

The second procedure which culminates in a § 42–151 court review is known as the "direct appeal". Under this procedure the

---

2. See footnote 1, formerly A.R.S. § 42–147. A.R.S. § 42–151 provides in part: "An appeal to the superior court relative to valuation or

classification of property is commenced by filing a notice of appeal with the superior court . . . .."

taxpayer may seek direct court review, under A.R.S. § 42–151, of the assessing body's determination as to classification or evaluation, bypassing the Appeal Board's administrative determination of these issues. A.R.S. § 42–245(A)(1).

■ It is important to note, however, that the superior court's review under A.R.S. § 42–151, whether that review is the result of an administrative appeal or a direct appeal, is limited to determining the correctness of the classification or valuation of the taxpayer's property and other issues such as unconstitutional discrimination cannot be heard in that proceeding. *McCluskey v. Sparks,* 80 Ariz. 15, 291 P.2d 791 (1955); *Maricopa County v. Chatwin,* 17 Ariz.App. 576, 499 P.2d 190 (1972).

■ A wholly separate method of contesting tax liability is the payment of the taxes due under protest and a suit for refund of those taxes contended by the taxpayer to be "illegally collected". A.R.S. § 42–204(C). The utilization of this method has two prerequisites: (1) the taxes must be due (the first half taxes in any given year are due on September 1 and become delinquent on November 1, A.R.S. § 42–341);[4] and (2) the taxpayer must pay these taxes "under protest". *Maricopa County v. Arizona Citrus Land Co.,* 55 Ariz. 234, 100 P.2d 587 (1940).

Again, it is important to note what issues may and may not be litigated in a § 42–204 payment under protest proceeding. Issues of classification or valuation may not be litigated in this setting, the exclusive method of determining these issues being a review under A.R.S. § 42–151. *Southern Pacific Company v. Cochise County,* 92 Ariz. 395, 377 P.2d 770 (1963); *Valley National Bank v. Apache County,* 57 Ariz. 459, 114 P.2d 883 (1941). On the other hand, issues of unconstitutional discrimination can be litigated in a 42–204

proceeding. *Maricopa County v. Chatwin, supra;*[3] *Drachman v. Jay,* 4 Ariz.App. 70, 417 P.2d 704 (1966).

■ In summary then, the legislative scheme for contesting tax issues is that, if the issue is valuation, that issue must be decided in a court review under A.R.S. § 42–151 and issues of unconstitutional discrimination cannot be heard; if, however unconstitutional discrimination is an issue to be heard, then the taxpayer must pay his taxes under protest and sue for refund under A.R.S. § 42–204, and issues of valuation cannot be tried in that proceeding.

It is against this background that the Project raises the issue that the review procedure under A.R.S. § 42–151 is unconstitutional. The Project contends that limiting an appeal under A.R.S. § 42–151 to issues of valuation (full cash value) is a denial of equal protection and due process. This is a three-pronged attack. First, it is contended that the legislature may not constitutionally provide a forum to settle disputes among parties and limit the issues which may be litigated therein. Second, it is contended that the legislature may not constitutionally allow court review of an administrative body (Appeal Board) on more limited issues than were considered by the administrative body. Third, it is contended that the limiting of issues in the A.R.S. § 42–151 proceeding results in the loss of the right to interpose reasonable and legitimate defenses, and thus is a denial of due process.

■ Turning to the Project's first contention, that is, that the legislature may not constitutionally limit issues to be litigated, we are of the opinion that this matter is controlled by *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). In that case, the Oregon statutes on Forceful Entry and Detainer were attacked on the

---

3. As we stated in *Chatwin*:

"The taxpayer who desires to raise non-classification or non-full cash value issues such as unconstitutional discrimination, is left to the previously existing remedies—the payment of the tax under protest and the filing

of an action for refund under the provisions of A.R.S. § 42–204 . . . ."

4. Insofar as the Project is concerned, its first half taxes shall be paid on the first Monday in November of each year. A.R.S. § 45–2202 (E).

ground that the only triable issue was the tenant's default and issues as to the landlord's breach were precluded. The court held:

"It is readily apparent that prompt as well as peaceful resolution of disputes over the right to possession of real property is the end sought by the Oregon statute. It is also clear that the provisions for early trial and simplification of issues are closely related to that purpose. The equal protection claim with respect to these provisions thus depends on whether the State may validly single out possessory disputes between landlord and tenant for especially prompt judicial settlement. In making such an inquiry a State is 'presumed to have acted within [its] constitutional power despite the fact that, in practice, [its] laws may result in some inequality.' " [citation omitted]

\* \* \* \* \* \*

"Since the purpose of the Oregon Forceful Entry and Wrongful Detainer Statute is constitutionally permissible and since the classification under attack is rationally related to that purpose, the statute is not repugnant to the Equal Protection Clause of the Fourteenth Amendment." 405 U.S. at 74, 92 S.Ct. at 874.

What has been said of the Oregon statute on Forcible Entry and Detainer may be paraphrased by inserting the "administrative-direct appeal" procedure enacted by the legislature to handle disputes between the taxpayers and the taxing authorities when the issue for resolution is a classification or valuation of the taxpayer's property. As is pointed out in *Maricopa County v. Chatwin, supra,* the legislature has devised a scheme for the prompt determination of disputes involving the classification or valuation of taxpayers' property. This scheme envisions that the sole issues to be determined are classification and valuation. In our opinion that is a valid classification for equal protection purposes as these issues constitute the majority of disputes

arising between the taxpayer and the taxing authorities. Likewise, the prompt disposition of these issues are provided so as to settle these issues prior to the due date of the taxes involved. We therefore find, at least for equal protection purposes, that the classification made by the legislature is reasonable and the procedures of limitation placed upon the processing of these issues are rationally related to a constitutionally permissible purpose (speedy disposition prior to the tax becoming due) and are therefore constitutional.

The second contention made by the Project and concurred in by the trial court is that the Appeal Board in reaching its determination of valuation was allowed to consider unconstitutional discrimination which the trial court is unable to consider in a 42–151 proceeding and therefore the scheme is unconstitutional. We reject the underlying premise upon which this argument is based. The Appeal Board cannot, when considering a taxpayer initiated review, consider issues of unconstitutional discrimination and is limited, like the trial court, to consideration of classification and valuation only. *Maricopa County v. Chatwin, supra.* In this case, there is no contention that the Appeal Board was confused as to the limitations on its power in considering the Project's appeal, and it properly limited itself to full cash value valuations and did not consider discrimination. It thus appears that the underlying due process defect found by the trial court —the inability to litigate issues in a § 42–151 appeal that were litigable before the Appeal Board—is simply not present.

The Project's third contention that the proceeding under A.R.S. § 42–151 is one in which it is denied the right to interpose reasonable and legitimate defenses (the issue of unconstitutional discrimination) is more serious in nature.

In considering this issue, it must be kept in mind that the executive function in any given tax year in setting classification and valuation of property for tax purposes is completed prior to September 1 when the

taxes actually became due. This is true even if the administrative appeal to the Appeal Board is taken, that body being required to render its decision by July 25. A.R.S. §§ 42–145 and 42–245(A)(2). Thus, at the time the taxes for the first half of the year became due, both the taxpayer and the assessing department know what the executive determination of the tax liability will be.

At this juncture, if the taxpayer is dissatisfied with his tax picture either because he contends his property is unconstitutionally discriminated against or his valuation is improper, he may invoke the dual relief previously outlined. He may file an appeal under A.R.S. § 42–151 contesting the valuation of his property and when the taxes become due on September 1, pay these taxes under protest and sue for refund, contesting the unconstitutional discrimination. The legislature specifically recognized this dual relief when the *taxpayer* is the dissatisfied party by providing in A.R.S. § 42–151(E), that:

> "All taxes levied and assessed against property on which an appeal has been filed *by the owner* thereof shall be paid under protest prior to the date the tax becomes delinquent . . . if such taxes are not paid prior to becoming delinquent . . . the court shall dismiss the appeal." (emphasis added)

The dissatisfied taxpayer is thus provided a forum to contest valuation (A.R.S. § 42–151 proceeding where unconstitutional discrimination may not be heard) and a forum to raise issues of unconstitutional discrimination (A.R.S. § 42–204 where issues of valuation will not be heard.) The proper procedure in such a case is a consolidation for trial of the § 42–151 proceeding and the suit for refund proceeding under 42–204. *See, Maricopa County v. Chatwin, supra.*

In our opinion, this duality of forums which provides complete relief to the taxpayer comports with due process. As was stated in *Lindsey v. Normet, supra:*

"Nor does Oregon deny due process of law by restricting the issues in FED [Forcible Entry Detainer] actions to whether the tenant has paid rent and honored the covenants he has assumed, issues that may be fairly and fully litigated under the Oregon procedure. . . .

" 'Due process requires that there be an opportunity to present every available defense.' [citations omitted] Appellants do not deny, however, that there are available procedures to litigate any claim against the landlord cognizable in Oregon." 405 U.S. at 65–66, 92 S.Ct. at 870.

The Project points out, however, that if it exercises its administrative appeal rights, is satisfied with the Appeal Board decision, the Department by exercising its appeal rights can deny it relief under A.R.S. § 42–204, to raise unconstitutional discrimination. The Project's argument is this: if it wins before the Appeal Board, the Department may wait until November 1, A.R.S. § 42–245(A), to file its § 42–151 appeal; in the meantime, the taxes become due on September 1 and in order to avoid the payment of interest, A.R.S. § 42–384, it must have paid its first half installment on taxes prior to November 1; being a satisfied taxpayer at this point (based upon the determination of the Appeal Board), the taxpayer is not required to pay his taxes under protest; having failed to pay under protest, this being a prerequisite to a suit under A.R.S. § 42–204, it is barred from seeking relief under this section and is thus barred from raising unconstitutional discrimination in reaching the valuation of its property.

We might tend to agree with this analysis if the sole avenue available to the Project for a court review under A.R.S. § 42–151 was the administrative appeal route. However, A.R.S. § 45–2204(A) provides in part that: "any district . . . not satisfied with a determination made by the department . . . pursuant to this article shall be entitled to the same remedies provided for under title 42." One of the remedies available under Title 42 is the

"direct appeal" approach provided by A.R. S. § 42–245.[5] This statute provides in part:

"Any person dissatisfied with the valuation or classification of his property . . . ., may appeal in the following manner:

"1. To the superior court in the manner provided in § 42–151 on or before November 1."

■ In other words, administrative review in the Project's case by the Appeal Board is not a prerequisite to court action seeking a determination of valuation. As we have previously indicated, where the taxpayer is the moving (injured) party in the superior court under A.R.S. § 42–151, this system is constitutionally sound for he is afforded a method by which, while the 42–151 proceeding is pending, he may pay his taxes under protest protecting his 42–204 remedies and may move to consolidate both actions which grants to him full relief and therefore due process.

The question thus narrows itself to whether the state legislature may constitutionally provide a remedy, which may deprive those exercising it of due process, if alternative remedies are also provided which afford due process. A similar question was presented in *Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1943). In *Yakus* the Defendant was charged in the District Court of Massachusetts with criminal violations of the Emergency Price Control Act of 1942. In that action, the defendant attempted to raise the validity of the regulations under which he was charged as a defense to the criminal prosecution. Under the act, Congress had vested exclusive jurisdiction to determine the validity of the regulations promulgated under the Act with the "Emergency Court of Appeals" and the United States Supreme Court. The District Court rejected the tendered defense to the criminal action and the defendant was convicted. He ap-

pealed, contending among other things that such a procedure denied him due process by not allowing him to present all his defenses to the criminal prosecution. The court stated the issue thusly:

"Congress . . . gave clear indication that the validity of the Administrator's regulations or orders should not be subject to attack in criminal prosecutions for their violation, at least before their invalidity had been adjudicated by recourse to the protest procedure.

\*    \*    \*    \*    \*    \*

"We come to the question whether the provision of the Act, so construed as to deprive petitioners of opportunity to attack the Regulation in a prosecution for its violation, deprive them of the due process of law guaranteed by the Fifth Amendment." 321 U.S. at 430–431, 64 S.Ct. at 670.

After discussing the necessity for uniform interpretation of the act by one tribunal and the adequacy of the remedy provided to test the validity of the regulation, the court concluded:

"Unlike most penal statutes and regulations whose validity can be determined only by running the risk of violation [citation omitted], the present statute provides a mode of testing the validity of a regulation by an independent administrative proceeding. There is no constitutional requirement that the test be made in one tribunal rather than in another, *so long as there is an opportunity to be heard and for judicial review which satisfies the demands of due process*, as is the case here [citations omitted].

"And we are pointed to no principle of law or provision of the Constitution which precludes Congress from making criminal the violation of an administrative regulation, by one *who has failed to avail himself of an adequate separate procedure* for the adjudication of its va-

---

5. This statute on its face would appear to apply only to taxpayers whose property is assessed by the county assessor and reviewed by the County Board of Equalization. How-

ever, in our opinion, this statute provides a "remedy" available to the project under A.R. S. § 45–2204(A).

lidity . . . ." 321 U.S. at 444, 64 S. Ct. at 677. (emphasis added)

Applying the rationale of *Yakus* to the alternate procedures provided by the legislature to the Project in this case, we see no constitutional infirmities in denying the Project a defense of unconstitutional discrimination in a § 42–151 proceeding (as the defense of invalidity was denied *Yakus* in the criminal prosecution) as long as a remedy (by direct appeal, payment under protest and consolidation of actions) existed by which these issues could be litigated and which the Project failed to invoke (as *Yakus* failed to avail himself of the separate procedure to test the validity of the regulations.)

We therefore hold, insofar as the Project is concerned, that the existing statutory procedure does not deny it due process and is therefore constitutional.

The judgment of the trial court is reversed and the matter remanded for further proceedings consistent with this opinion.

SCHROEDER and WREN, JJ., concur.