564 P.2d 398

PIMA COUNTY, James Lee Kirk, as County Treasurer of Pima County, and the Board of Supervisors of Pima County, Appellants,

v.

AMERICAN SMELTING AND REFINING COMPANY, a corporation, Appellee.

No. 2 CA–CIV 2223.

Court of Appeals of Arizona, Division 2.

Feb. 15, 1977.

Rehearing Denied March 29, 1977.

Review Denied April 19, 1977.

Bruce E. Babbitt, Atty. Gen. by James D. Winter, Asst. Atty. Gen., Phoenix, for appellants.

Evans, Kitchel & Jenckes, P. C. by Dean C. Short, II, and Earl H. Carroll, Phoenix, for appellee.

## OPINION

RICHMOND, Judge.

American Smelting and Refining Company (ASARCO) brought an action pursuant to A.R.S. § 42–204 to recover a portion of 1973 taxes on personal property and improvements of its San Xavier unit, which were paid to Pima County under protest. Pima County moved to dismiss on jurisdictional grounds, contending that a taxpayer's sole method for challenging classification or valuation of its property is an appeal under A.R.S. § 42–151, and that the action was neither timely under the latter statute nor had ASARCO exhausted its administrative remedies. The motion was denied, and the case tried to a judgment in favor of ASARCO based on a finding that the property in question should have been assessed at 25 per cent of value, as a commercial or industrial facility, rather than at 60 per cent as a producing mine.

■ Pima County has appealed from the judgment, first on the jurisdictional grounds raised by its motion to dismiss, and second, on the alternative grounds that the property was properly classified pursuant to A.R.S. §§ 42–124 and 42–136(A). The jurisdictional question has been resolved during the pendency of this appeal by our Supreme Court in *Department of Prop. Valu. v. Salt River Proj., Etc.*, 113 Ariz. 472, 556 P.2d 1134 (1976), eliminating conflict between the decisions of the Court of Appeals, Division One, in that case, 27 Ariz.App. 110, 551 P.2d 559 (1976), and the prior case of *County of Maricopa v. Chatwin*, 17 Ariz.App. 576, 499 P.2d 190 (1972). It is now clear that a dissatisfied taxpayer may raise questions concerning the factual correctness of the classification or valuation of his property in a suit brought under A.R.S. § 42–204(C) for refund after payment under protest.

Pima County's contention that the property was properly classified poses a unique problem. The property in question essentially comprises a vat leach plant used by ASARCO in 1973 exclusively for leaching oxide ores from the north ore body on mining properties operated by ASARCO on the San Xavier Indian Reservation pursuant to a mining lease. In a prior case involving the same parties, this court held that neither the minerals underlying the reservation, which are held in trust by the United States for the Papago Indian Tribe, nor ASARCO's leasehold interest therein were subject to property taxation. *Pima County v. American Smelting & Refining Co.*, 21 Ariz.App. 406, 520 P.2d 319 (1974).

The vat leach plant is located outside the reservation. ASARCO maintains, however, that in view of our prior decision it does not fall within the class of property described in A.R.S. § 42–136(A)1.(d) as follows:

"Producing mines and mining claims, the personal property used thereon, the improvements thereto and the mills and smelters operated in conjunction therewith valued under the provisions of § 42–124."

ASARCO points out that the provisions of § 42–124(A) limit valuation to ". . . producing mines, the personal property used thereon, the improvements thereto and the mills and smelters operated in conjunction therewith *within the state* . . . ." (emphasis supplied), and contends that the vat leach plant, although properly classed

as a smelter, is not used in conjunction with a producing mine "within the state", inasmuch as it was used exclusively for leaching oxide ores from an ore body on the Indian reservation. We disagree.

■ The trial court's judgment is based in part on its conclusion of law as follows: "It has been determined that ASARCO's San Xavier Unit mining operation cannot be valued, assessed or levied upon as a producing mine. *Pima County v. American Smelting and Refining Co.*, [supra]." We believe the trial judge read too much into our previous opinion. While we held that the lands and underlying minerals, as well as ASARCO's leasehold interest therein, were exempt from taxation, it does not follow that ASARCO's San Xavier unit mining operation is not a producing mine. Nor do we agree with ASARCO's interpretation of the applicable statutes to exclude the property because it is used in conjunction with mining operations on the reservation. In that connection, we note that A.R.S. § 42–124(B) provides for valuation ". . . of all producing oil and gas interest within the state . . . ." Where such interest amount to more than a leasehold, they have been held to be taxable under A.R.S. § 42–227.04 although the oil and gas were contained in land owned by the Navajo Indian Tribe. *State v. Superior Court for Maricopa County*, 113 Ariz. 248, 550 P.2d 626 (1976). Also, the transaction of business within the boundaries of an Indian reservation has been held taxable as ". . . engaging in the business of mining in Arizona." *Industrial Uranium Co. v. State Tax Com'n*, 95 Ariz. 130, 387 P.2d 1013, 1014 (1963).

■ The vat leach plant was valued by the Department of Property Valuation[1] for tax year 1973 at $7,400,000 based on net book value (cost less depreciation). ASARCO does not dispute the valuation if the plant is classed as a commercial or industrial facility, inasmuch as other commercial and industrial facilities are valued on a similar basis, but contends (and the trial court concluded) that such valuation as a producing mine was inequitable and excessive because other producing mines were valued in 1973 on another basis, i. e., discounted cash flow.[2] Assessing officials cannot systematically and intentionally use different rules for measuring the value of property of the same class if by the use thereof great inequality results. *McCluskey v. Sparks*, 80 Ariz. 15, 291 P.2d 791 (1955). The San Xavier unit presents a special problem however, in view of the previous case involving the mineral lease. Because a portion of the operation is exempt from taxation, it is not susceptible to the unit valuation method applied to other producing mines. Also, the vat leach plant was virtually new in 1973, thus particularly susceptible to valuation on a cost basis.

Finally, ASARCO asserts that the plant is a custom smelter, because ownership remains with the Indian lessors until the minerals reach the drying pad, and as such must be classified like other custom smelters as a commercial or industrial facility. Again we disagree. In a custom smelter operation, the plant is held out for hire for smelting of ores owned by others. While the mining lease here does not specify at what stage ownership of the minerals passes from the lessor to lessee, its primary purpose is the mining, removal, processing and sale of the minerals by ASARCO in consideration for a royalty to be paid by ASARCO. Under these circumstances, the leaching does not constitute a custom smelter operation.

Under the evidence, however, we do not believe that the entire property can be assessed as a producing mine. The trial court found that the net book value of the leach plant properly allocable to the north ore body was $4,218,000. There was evidence that where a plant had been built larger than required for a particular producing ore

---

1. The Department of Property Valuation has been replaced by the Department of Revenue, Laws 1973, Ch. 123, § 18; A.R.S. § 42–111 as amended.

2. The trial court found, on substantial evidence, that the full cash value for 1973 of the San Xavier unit, including the vat leach plant, based on discounted cash flow was $5,121,000.

body, only that portion of the plant related to the producing ore body was assessed at 60 per cent. Inasmuch as only part of the property here was used in conjunction with a producing mine, the value of the remainder, $3,182,000, should be assessed as commercial or industrial property. Thus, we hold that property of the value of $4,218,000 was properly classified as a producing mine and assessed at 60 per cent of such value, but that property of a value of $3,182,000 should have been classified as commercial or industrial property and assessed at 25 per cent of such value.

The judgment is reversed and remanded with directions to enter judgment in favor of appellee for the amount of refund due to it on the basis of this opinion.

HOWARD, C. J., and HATHAWAY, J., concur.