838 P.2d 822

**BERGE FORD, INC.**

v.

**MARICOPA COUNTY; Arizona Department of Revenue.**

**SIERRA TUCSON, INC.; Sierra Tucson/Arizona Holdings, Inc.; Sierra Tucson Companies, Inc.; Sierra Tucson Educational Materials, Inc.**

v.

**PIMA COUNTY; Arizona Department of Revenue.**

Nos. TX 91–00932, TX 91–01352.

Tax Court of Arizona.

Sept. 11, 1992.

Dioguardi, Poli & Ball, Ltd. by Barbara J. Forde, Phoenix, for plaintiff-appellant Berge Ford.

Maricopa County Atty. by Rachelle Z. Leibsohn, Phoenix, for defendants-appellees Maricopa County and Arizona Dept. of Revenue.

Townsdin Dybvig & Heimbach, P.C. by Gary W. Heimbach, Tucson, for plaintiffs-appellants Sierra Tucson.

Pima County Atty. by Peter E. Pearman, Phoenix, for defendants-appellees Pima County and Arizona Dept. of Revenue.

## OPINION

MORONEY, Judge.

### The Issue Presented and How It Comes To The Court

Both of the above captioned cases are property tax appeals brought to the Court pursuant to A.R.S. § 42–246.[1] In both cases, the Taxpayer has, in an earlier proceeding, challenged the valuation or classification of the same property for the same tax year as is the property and year which is the subject of the cases here under review.

In *Berge Ford*, the subject property was classified in class four by the Assessor pursuant to A.R.S. § 42–162, and valued as vacant land. The Taxpayer appealed the valuation to the Assessor pursuant to A.R.S. § 42–221(E). In its appeal to the Assessor, Berge Ford did not challenge the description of the property as vacant land. The Assessor did not reduce the valuation, and the Taxpayer timely appealed to the Board of Equalization pursuant to A.R.S. § 42–241.01(A).

The Board of Equalization rendered a decision on the Taxpayer's valuation appeal on May 7, 1991. The Taxpayer did not appeal the decision of the County Board of Equalization. On October 29, 1991, the Taxpayer filed the appeal now before the Court. In this appeal, the Taxpayer asserts that the Assessor made an error in "classification" because he did not provide the subject property an agricultural classification pursuant to A.R.S. § 42–167.

In *Sierra Tucson*, there are eight parcels of property. Four of the eight parcels are the subject matter of another property tax appeal, filed earlier, and presently pending in this Court. *Sierra Tucson, Inc. v. Pima County*, TX 91–00357. In this Opinion, no decision is made with respect to the four parcels not involved in the earlier filed case.

In their Complaint herein, the *Sierra Tucson* Taxpayers allege that the "Plaintiffs' property has been over-valued and erroneously assessed." Complaint and Notice of Appeal at 3. In the other case involving the same property, and tax year, the Taxpayers, through a different attorney, have alleged that the properties have been given an erroneous classification.

In both of these cases the taxing authorities have moved to dismiss the Complaint. The Court agrees with the government. In both cases, the motion to dismiss will be granted.

1. There are eight parcels of property in the *Sierra Tucson* appeal. At least four of these parcels were once classified in class four or class five pursuant to A.R.S. § 42–162. In a proceeding before the Pima County Board of Supervisors pursuant to A.R.S. § 42–405, the Pima County Assessor was successful in having four of the eight parcels reclassified into class three. The Taxpayers appealed that decision to the State Board of Tax Appeals, and then to the Tax Court in an earlier different case. In the Complaint herein, the Taxpayers do not cite any statute which they allege gives them the right to appeal. The allegations in the Complaint set forth a claim pursuant to A.R.S. § 42–246. This would appear to be appropriate for those parcels not reclassified pursuant to A.R.S. § 42–405. All of the parcels which are the subject of the Court's ruling in his Opinion were among those parcels reclassified, but it is not clear whether any of the remaining parcels were or not. A.R.S. § 42–405(C) provides that "[a] taxpayer who is dissatisfied with the valuation or classification of his property as determined pursuant to this section may appeal to the state board of tax appeals or to the superior court pursuant to § 42–245." A.R.S. § 42–245, however, no longer provides for appeals to superior court, except by way of the State Board of Tax Appeals.

This procedural dilemma has not been placed in issue. It is not necessary for this Opinion for the Court to decide anything with respect to it. Therefore, there is no ruling pertinent thereto.

■ The issue presented to the Court in these two appeals is whether a taxpayer can appeal "valuation" or "classification" independently of the other, and still preserve its right to file a separate appeal on the other issue. The Court holds that a taxpayer cannot so split its cause of action.

### The Present Statutory Scheme Does Not Contemplate Separate Appeals

Arizona imposes a tax on property. There are four elements in the formula by which the property tax is measured: classification, valuation, assessment ratio, and tax rate.

Although some property in Arizona is assessed by the Department of Revenue, most property is assessed by a county assessor.[2] All of the property involved in the cases under review was assessed by a county assessor. When a county assessor assesses property, he or she determines classification, valuation, and the assessment ratio. In the final step of assessment, the tax rate is collectively determined by the governing bodies of the various taxing authorities which levy property taxes. A.R.S. Title 42, Chapter 2, Articles 2 and 4.

In performing his or her function, the assessor applies certain criteria to the facts as she or he finds them, and thus effects classification and valuation. The criteria which the assessor applies are derived from applicable statutes, guidelines of the Department of Revenue, and policy from the assessor's own office. The statutory framework which provides for the assessment of property contemplates that the assessor will exercise much discretion in deciding classification and valuation. Once classification and valuation have been established, however, the assessor has little latitude in applying the assessment ratio. The implementation of this element is a straightforward application of A.R.S. § 42–227(C).

■ Taxation is a taking of property by government. If government is going to seek to take a taxpayer's property, constitutional due process requires that the taxpayer be given an opportunity for a hearing before an impartial tribunal. In Arizona, for property taxes, the impartial tribunal is found in the administrative appeal process. *Seafirst Corp. v. Arizona Dep't of Revenue*, 172 Ariz. 54, 833 P.2d 725 (Tax 1992).

■ Subject to the constitutional requirement of a fair hearing, a state can establish any procedure it chooses to provide a taxpayer its right to due process. *County of Pima v. State Dep't of Revenue*, 114 Ariz. 275, 560 P.2d 793 (1977). For persons whose property is subject to a tax assessment, Arizona has chosen to provide a series of administrative appeals. For property assessed by a county assessor, the first level of appeal is to the assessor himself. A.R.S. § 42–221(E). Subsequent administrative appeals are to the County Board of Equalization and, from there, to the State Board of Tax Appeals. A.R.S. §§ 42–241.01(A), 42–245(A).

The appeals, however, are not from the imposition of the property tax, but rather, are from the application by the assessing authority of the discretionary elements by which the tax is measured. These elements are classification and valuation. In analyzing the issue presented, it is important to keep in mind that classification and valuation are not independent of one another. Valuation is determined by classification. Classification is a necessary first step to valuation.

■ The Court holds that the relevant Arizona statutes provide for only one appeal from the acts of the assessor in performing her part of the assessment process. A separate appeal for classification and a separate appeal for valuation are not authorized.

A.R.S. § 42–221 is a long statute which sets forth the assessor's duties in the assessment of property in his or her county. It also provides for an appeal to the asses-

---

**2.** There are some circumstances in which property may be assessed by a county board of equalization. A.R.S. § 42–241(C).

sor. This is the appeal which starts the administrative property tax appeal process. The first two sentences of A.R.S. § 42–221(E) read as follows:

> Any owner of property which in his opinion has been valued too high or otherwise improperly valued or listed on the roll by the assessor may file a petition with the assessor on a form prescribed by the department. The petition shall set forth in writing the owner's opinion of the full cash value of the property and substantial information which justifies that opinion of value for the assessor to consider for purposes of basing a change in classification or reduction or correction of the valuation.

Throughout the balance of the subsection, references are made to "the" petition. There is nothing in the language of this statute that would indicate that the legislature contemplated that there might be two appeals from the assessor's discretionary decision. The short time provided in the statute in which to appeal to the assessor reinforces the conclusion that the legislature did not intend to authorize separate appeals for classification and valuation.

When the administrative appeal process is over, A.R.S. § 42–176 authorizes an appeal from the State Board of Tax Appeals to the Tax Court. A.R.S. § 42–246 authorizes appeals to the Tax Court directly from valuation or classification decisions of the assessor that are not appealed administratively. Both A.R.S. § 42–176 and A.R.S. § 42–246 direct that appeals of valuation and classification proceed "in the manner provided" by A.R.S. § 42–177.

A.R.S. § 42–178 provides for "[h]earing of appeal" in the Tax Court. A.R.S. § 42–178(B) authorizes any party to "present evidence of any matters that relate to the classification or to the full cash value of the property in question as of the date of its assessment."

If, at the hearing, the Court finds the valuation is excessive or insufficient, subsection C of the statute instructs the Court to "find the full cash value of the property." If the Court finds that the classifica-

tion is in error, subsection E requires the Court to "determine the correct classification." Again, there is no indication in the language of the statutes which authorize appeals to the Tax Court that the legislature intended that there be more than one hearing on appeal, or that there be separate appeals for valuation and classification.

### A.R.S. § 42–178(I) Does Not Authorize Separate Appeals

In *Sierra Tucson,* the Taxpayers ask alternatively that, if the Court agrees with government, it not dismiss the appeal, but consolidate it with the earlier filed cause of action. No authority is cited as authorizing such a consolidation. Rule 42(a) of the Arizona Rules of Civil Procedure authorizes the consolidation of actions involving common questions of law or fact. Rule 42(a), however, contemplates the joining of actions which are independently viable. The Court presumes that the Taxpayers are relying on A.R.S. § 42–178(I) to keep their cause alive so that Rule 42(a) can be applied.

A.R.S. § 42–178(I) reads as follows:

> If two or more actions have been filed pursuant to this title for the same taxable year with respect to the same property, such actions shall be consolidated for the purpose of trial. If the issues other than valuation or classification are raised by either party, the priority provisions of subsection A of this section shall not apply.

A reading of this subsection might suggest that the legislature did in fact contemplate that separate claims could be filed to challenge classification and valuation. The Court is of a contrary opinion.

In 1976, in *Dep't of Property Valuation v. Salt River Project Agricultural Improvement & Power Dist.,* 27 Ariz.App. 110, 551 P.2d 559 (1976), the Court of Appeals held that issues of classification and valuation could not be litigated except pursuant to what is now numbered A.R.S.

§ 42–177.[3] *Salt River Project*, 27 Ariz. App. at 115, 551 P.2d at 564. "On the other hand, issues of unconstitutional discrimination can be litigated in a 42–204 proceeding." *Salt River Project*, 27 Ariz. App. at 115, 551 P.2d at 564. The Court of Appeals also observed that, where both § 42–177 and § 42–204 claims were filed in separate causes of action, in which the subject property and tax year were the same, the correct procedure was "a consolidation for trial." *Salt River Project*, 27 Ariz.App. at 117, 551 P.2d at 566.

Later in 1976, the Arizona Supreme Court, in *Dep't of Property Valuation v. Salt River Project Agricultural Improvement & Power Dist.*, 113 Ariz. 472, 556 P.2d 1134 (1976), took review of the Court of Appeals' case specifically to reverse the Appeals Court's holding that classification and valuation issues could not be the subject of a § 42–204 proceeding.

The effect of the Supreme Court holding was to increase the time during which classification and valuation issues could be appealed. This is not what the legislature wanted. In 1979, the legislature added subsection E to A.R.S. § 42–204. 1979 Ariz.Sess.Laws 762. This effectively reinstated the Court of Appeals' holding that valuation and classification issues could only proceed pursuant to what is now A.R.S. § 42–177. *See RCJ Corp. v. Arizona Dep't of Revenue*, 168 Ariz. 328, 812 P.2d 1146 (Tax 1991).

In the same bill, the legislature also passed what is now subsection I of A.R.S. § 42–178, cited above. 1979 Ariz.Sess. Laws 762. In its version of *Salt River Project*, the Court of Appeals suggested that if there were any constitutional defect in precluding constitutional issues from valuation or classification appeals, the defect was cured by a separate cause of action raising constitutional issues, and a provision that the two causes of action could be consolidated for trial. What is now subsection I of A.R.S. § 42–178 was passed to insure that the provision for consolidation

would be available. The Court holds that A.R.S. § 42–178(I) does not authorize or approve separate causes of action for valuation and classification.

### Nor Does A.R.S. § 42–254 Authorize Separate Appeals

A.R.S. § 42–254 states that:

[a]ny person may have the classification assigned to his property reviewed and may appeal from the decision resulting from such review in the same manner as provided by law for review of a valuation for ad valorem property taxes and appeal from such review.

In the Old Days, When the West was Young, the law in Arizona was that all property be assessed at its full cash value. That was the law, but the law was not followed. *Southern Pacific Co. v. Cochise County*, 92 Ariz. 395, 377 P.2d 770 (1963). In *Southern Pacific*, the railroad complained that the State Tax Commission had assessed its property at eighty-nine percent of its full cash value, while county assessors had assessed non-railroad property in counties in which the railroad had property at twenty percent of full cash value.

If all property is to be assessed at its full cash value, there is no need for classification or for assessment ratios. Before 1963, there were no statutory classes into which property was divided. Nor was there any provision for assessment ratios. The various assessing authorities in the state determined assessed valuation by their own standards. The relationship of assessed valuation to full cash value varied within taxing jurisdictions, depending on the nature of the property. *Southern Pacific*, 92 Ariz. 395, 377 P.2d 770; *McCluskey v. Sparks*, 80 Ariz. 15, 291 P.2d 791 (1955).

The Arizona Supreme Court, in *Southern Pacific*, held that the practice of systematically assessing the railroad at a different proportion of full cash value than other property was unlawful without implementing legislation. According to the Supreme Court, such a practice resulted in an

**3.** What is now A.R.S. § 42–177 was numbered § 42–151 in 1976, when *Salt River Project* was

decided.

unconstitutional discrimination against the railroad.

The *Southern Pacific* case dealt a mortal blow to the status quo of Arizona property taxation. Shortly after the decision was announced, the legislature enacted legislation to revalue all property in the state and to ascertain the assessment practices of the various county assessors. A Division of Appraisal and Assessment Standards was created to gather the data and to effect the "classification, revaluation, and reassessment" of all property in the state. 1963 Ariz.Sess.Laws 80.

The 1963 Legislature also provided a classification statute creating twenty-six classes of property. This classification was "for the purpose of determining the basis of valuation for assessments...." 1963 Ariz.Sess.Laws 81–82. No statute was enacted, however, which provided for different assessment ratios. The letter of the law remained "full cash value."

While the 1963 Legislature imposed an earlier deadline, it was 1967 when the Division of Appraisal and Assessment Standards finished its work. The 1967 Legislature, in regular session, passed Chapter 107, a major overhaul of the property assessment process. It was to be effective for the tax year 1968. 1967 Ariz.Sess. Laws 555–597.

In Chapter 107, "valuation" was the basis of assessment. For all its sweeping revision of the process, Chapter 107 did not address classification. Nor did it provide for any assessment ratios.

Before *Southern Pacific*, statutes which authorized appeals of property taxes addressed themselves to appeals from an "assessment." In Chapter 107, all appeals were of "valuation." In a special session after the regular session of 1967 concluded, the legislature passed A.R.S. § 42–254. 1968 Ariz.Sess.Laws 854. In a still later special session in 1967, the classification statute passed in 1963 was repealed and a new one was passed providing for only four classes. In the same bill, assessment ratios were established. Valuation was still to be determined at market value. 1968 Ariz.Sess.Laws 905–907. While the term "full cash value" was defined in Chapter 107, "market value" was not.[4]

When the 1968 tax year dawned, there were numerous statutes authorizing appeals at various levels, all from an administrative determination of valuation. There was also A.R.S. § 42–254 which provided that a property owner could have the classification of his property reviewed in the same manner as it could have the valuation reviewed.

Since, in 1968, the standard of valuation was the same across all classes of property, valuation and classification were capable of being independently reviewed. The Court is of the opinion that what the legislature intended by the enactment of A.R.S. § 42–254 was to make clear that classification could be appealed the same as valuation. The Court is also of the opinion that the legislature contemplated that, if valuation and classification were both to be challenged, it be done in the same proceeding.

Since 1968, the law has changed. The standard of valuation is no longer the same across all classes of property. In the process by which the property tax is measured, valuation is now dependent on classification. Statutes which provide for property tax appeals, provide for appeals from "classification or valuation." The Court holds that A.R.S. § 42–254 does not authorize a separate appeal of classification.

### Classification and Valuation are Interdependent

When government in Arizona imposes a tax on real property, the first administrative step in the process is to classify that property pursuant to A.R.S. § 42–162. The next step is to determine its full cash value. A.R.S. § 42–201 defines full cash value as "that value determined as prescribed by statute."

4. A.R.S. § 42–201(7) as reflected in Chapter 107, read as follows: " 'Full cash value' means the price at which property would sell if voluntarily offered for sale by the owner upon such terms as property is usually sold, and not the price which might be realized if the property were sold at forced sale." 1967 Ariz.Sess.Laws 570.

A.R.S. § 42–141(A)(5) directs the Department of Revenue to "[a]dopt standard appraisal methods and techniques for use by the department and county assessors in determining the valuation of property ... In the standard appraisal methods and techniques adopted, current usage shall be included in the formula for reaching a determination of full cash value."

The issue is slightly clouded in *Berge Ford* because A.R.S. § 42–162 does not provide a class for agricultural property. A.R.S. § 42–141(A)(5) directs that property used for agricultural purposes shall be valued "using solely the income approach to value...." The statute also sets out the sources of information by which the assessor will determine what that value is. The subject property in this case, as classified and valued by the Assessor, is classified in class four and valued by standard appraisal methods and techniques as vacant land. If the Assessor had determined that the property was "land used for agricultural purposes," it still would have been classified in class four, but the method used to determine valuation would have been as directed by A.R.S. § 42–141.

In its memorandum in support of its Motion to Dismiss, Maricopa County points out that the statutory scheme provides for different methods of valuation as between land used for agricultural purposes and vacant land with an unspecified use, but places them both in the same class, pursuant to A.R.S. § 42–162. Therefore, Maricopa County argues, whether the Taxpayer's property is agricultural or not is a valuation issue, not one of classification. Since the Taxpayer appealed valuation to the Assessor and did not exhaust its administrative remedies, the County concludes that the Taxpayer's Complaint must be dismissed.

The Court agrees that the Taxpayer's Complaint should be dismissed, but, the Court does not see the Taxpayer's fortune standing or falling as a valuation issue. A.R.S. § 42–167 provides statutory guidelines to the assessor for determining whether land is used for an agricultural purpose. The statute's first sentence speaks of "classification as property used for agricultural purposes."

As has already been noted, A.R.S. § 42–141 prescribes the statutory method for determining full cash value for land used for agricultural purposes. Golf courses and shopping centers are valued by statutory methods that differ from other commercial property.[5] A.R.S. § 42–201 provides that "[i]f no statutory method is prescribed, full cash value is synonymous with market value...." Even so, the requirement in A.R.S. § 42–141(A)(5) that "current usage shall be included in the formula," acts to qualify full cash value. What is full cash value differs with the use to which the property is put.

■ In determining valuation, the assessor must first determine what A.R.S. § 42–162 class in which to place the property. Then, depending upon the use to which the property is put, the assessor must ascertain and apply the applicable statutory formula. Deciding what class and what valuation method to use is a process of classification. The process of classification is not limited to the application of A.R.S. § 42–162. It also includes whatever additional steps are needed to determine the appropriate statutory valuation formula.

■ Applying the valuation method selected is a process of valuation. Classification precedes valuation. An appeal of valuation concedes classification. An appeal of classification necessarily is also an appeal of valuation. This is true even if the statutory method of valuation is the same after the classification is changed. Valuation and classification are but two elements used to determine a single result, the base upon which the tax will be measured.

A.R.S. § 42–241.01(A), provides as follows: "Any person who files an appeal with the county assessor shall not file an appeal with the superior court unless the person is dissatisfied with the valuation or classification of his property after all levels

---

5. A.R.S. § 42–146 and A.R.S. § 42–147.

of administrative appeals have been exhausted."

 A.R.S. § 42–241.01(F) provides that an appeal from the decision of the County Board of Equalization be as provided in A.R.S. § 42–245. A.R.S. § 42–245 provides for an appeal from the County Board of Equalization to the State Board of Tax Appeals, if such appeal is filed within fifteen days of the decision of the County Board. The State Board of Tax Appeals is an administrative agency. An appeal to the State Board is a "level of administrative appeal" which must be exhausted before the taxpayer can come to superior court. In *Berge Ford*, the Taxpayer did not appeal to the State Board, and, therefore, in its challenge to valuation did not exhaust all levels of administrative appeal.

In *Sierra Tucson*, the property was the subject of a correction in classification and valuation by the Pima County Board of Supervisors pursuant to A.R.S. § 42–405. The Taxpayers appealed the County Board's determination of classification to the State Board of Tax Appeals pursuant to A.R.S. § 42–245. In their appeal to the State Board, the Sierra Tucson Taxpayers did not raise any issue with respect to the County Board's valuation decisions.

The State Board of Tax Appeals issued its decision on July 25, 1991. A.R.S. § 42–176(A) provides that appeals from the State Board to the Tax Court, "shall be taken within sixty days after the date of the state board's decision unless the taxpayer did not own the property during the period of appeal, or a specific issue of law exists. In such instances, appeals may be filed in the superior court by November 1 without first exhausting administrative remedies."

The Taxpayers appealed the decision made by the State Board to the Tax Court within 60 days. In their Complaint in the Tax Court, the Taxpayers complained only of the Board's classification decisions. All of that was in another case. The Complaint in this case was filed in Tax Court on November 1, 1991.

In *Berge Ford*, the Taxpayer lost its right to appeal the classification of its property in 1991 to the Tax Court when it failed to appeal the decision of the Board of Equalization.

In *Sierra Tucson*, what right, if any there be, the Taxpayers have to have the valuation of their property reduced must be claimed in their earlier filed appeal from the decision of the State Board of Tax Appeals. Their second appeal is without statutory authority, and, to the extent of the property common to both cases, must be dismissed.